Jeffrey NIELSEN, Plaintiff,

v.

INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, LOCAL LODGE 2569, International Association of Machinists & Aerospace Workers, AFL–CIO–CLC, Mercy Ambulance of Fort Wayne, Inc., Defendants.

No. 1:94–cv–337.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

June 21, 1995.

Thomas M. Kimbrough, Barrett and McNagny, Fort Wayne, IN, and Glenn M. Taubman, National Right to Work Legal Defense Foundation, Inc., Springfield, VA, for plaintiff.

Michael S. Huntine, Lewis and Wagner, Indianapolis, IN, Mark Schneider, Upper Marlboro, MD, William T. Hopkins, Jr., Eric H.J. Stahlhut, Gallucci Hopkins and Theisen P.C., Fort Wayne, IN, and Marjorie H. Gordon, Obermayer Rebmann Maxwell and Hippel, Philadelphia, PA, for defendants.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on Union Defendants' and Plaintiff Jeffrey Nielsen's Motions for Summary Judgment. On March 31, 1995, Plaintiff Nielsen filed a Motion for Summary Judgment and a Request for Oral Argument. Union Defendants filed a Motion for Summary Judgment on April 28, 1995. On May 1, 1995, Defendant Mercy Ambulance filed a Brief in Response to Nielsen's Motion for Summary Judgment. Nielsen filed a Memorandum of Law in Opposition to Union Defendants Motion for Summary Judgment on May 30, 1995. On June 15, 1995, Union Defendants filed their Reply Memorandum. For the following reasons, Union Defendants' Motion for Summary Judgment is granted, and Plaintiff Nielsen's Motion for Summary Judgment is denied.

## FACTUAL BACKGROUND [1]

Plaintiff Nielsen is employed as a paramedic by Mercy Ambulance, and has been so employed since approximately February of 1992. He is employed within a bargaining unit represented by IAM Local Lodge 2569 ("Local 2569"). Mercy Ambulance and Local 2569 are parties to a collective bargaining agreement governing the employment of a bargaining unit of paramedics and related employees, including Plaintiff Nielsen. In pertinent part, the collective bargaining agreement provides the following:

Section 1. Agency Shop:

As a condition of continued employment, all employees included within the unit described in Article II [sic] of this Agreement shall either become a member of the Union and pay dues thereto, or in lieu thereof, shall pay an amount equal to the Union's initiation fee and shall thereafter pay to the Union each month, either directly or through payroll deduction, an amount equal to the regular monthly dues and fees in effect for other employees in the bargaining unit who are members of the Union. This obligation shall begin on the first day of the month following completion of six (6) months' employment.

Each member of the bargaining unit covered by this Agreement who has not become a member of the Union, or in lieu thereof, has not tendered the equivalent of Union dues as provided above, within seven (7) days of the first day of any month following the effective date of this Agreement or completion of his/her sixth month of employment, shall be notified by the Union by certified mail, with a copy to the Company's Director of Operations, that failure to pay either dues or agency shop fees within ten (10) days following receipt of such notice shall result in termination of employment. Should the employee fail to make such payment with [sic] the ten-day period, the Company shall, within three (3) working days after receipt of notice by

---

[1]. The facts are taken from those enumerated in plaintiff's and Union Defendants' Motions for Summary Judgment, and include those not in dispute by the parties. "The union defendants accept and incorporate by reference the material facts as recited in plaintiff's motion...." (Union Defendants' Memorandum in Support of Their Motion for Summary Judgment, p. 2.) Defendant Mercy Ambulance also does not dispute any of the factual allegations contained in Nielsen's Statement of Material Facts, except that Mercy denies any knowledge as to the exact amount charged by the union to voluntary dues-paying members as opposed to the amount charged by the union to dues objectors. Mercy claims that it engages in an automatic dues deduction based on the numbers submitted to it by the union and is not involved in the internal administration of the union. (Defendant Mercy Ambulance's Opposition to Plaintiff Jeffrey Nielsen's Motion for Summary Judgment, pp. 1–2.)

certified mail from the Union, discharge such employee.

(Exhibit 1, Plaintiff's Motion for Summary Judgment.)

Shortly after being hired by Mercy Ambulance, Plaintiff Nielsen joined the IAM International and its Local 2569 as a member in good standing. On or about July 5, 1994, Plaintiff Nielsen sent a letter to Local 2569 resigning from membership in the unions and invoking his right to be allowed to pay "reduced dues" pursuant to *Communications Workers of America v. Beck*, 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988). On or about July 22, 1994, Local 2569, by and through its president, Rebecca Smith, sent Plaintiff Nielsen a response indicating that while his resignation from union membership was "accepted," Local 2569 was "in no position to act upon your request to become a fee objector." The letter also stated: "If you wish to pursue this matter further, I suggest you take the matter up with the General Secretary–Treasurer directly," referring to IAM International's General Secretary–Treasurer. (Exhibit 3, Plaintiff's Motion for Summary Judgment.) Defendant Local 2569 is affiliated with Defendant IAM International.

On or about August 16, 1994, Plaintiff Nielsen sent a letter to Donald E. Wharton, General Secretary–Treasurer of the IAM International, stating in part:

I hereby notify you that I wish to be a "financial core objector" only, in accordance with the Supreme Court's decision in *CWA v. Beck* [487 U.S. 735], 108 S.Ct. 2641 [101 L.Ed.2d 634] (1988).

I object to the collection, as well as the use, of any of my money for any purposes other than paying my pro rata share of your *direct* expenses for fulfilling your *limited* statutory duty under § 9(a) of the NLRA to engage in collective bargaining, contract administration and grievance processing for the unit of employees at in [sic] which I am employed.

(Complaint ¶ 16; Exhibit 4, Plaintiff's Motion for Summary Judgment.)

On or about August 24, 1994, Defendant IAM International, by and through its Gen-

eral Secretary–Treasurer, Donald E. Wharton, responded to Nielsen that his objection to the amount of dues and fees that he was required to pay was "not properly perfected under the guidelines set forth in the Official Notice in the December, 1993 issue of *The Machinist.*" Specifically, the Wharton correspondence stated that Nielsen's request "was not postmarked or received during the appropriate 30 day period." (Complaint ¶ 17; *see* Exhibit 5, Plaintiff's Motion for Summary Judgment.) Defendant IAM International acts as an agent of Defendant Local 2569 for the limited purposes set forth in the "Official Notice."

In December of 1993, IAM International mailed to Plaintiff Nielsen a newspaper containing a notice describing his right to receive a dues reduction ("dues reduction notice"). Plaintiff Nielsen received that notice. All employees who are required to pay dues or fees to the IAM and IAM-affiliated Local also were mailed this same notice. That notice specifies that nonmembers working under collective bargaining agreements containing union security clauses are entitled to a fee reduction, "regardless of the wording of the [union security] clause." (*See The Machinist,* Vol. XLVII, No. 8, Dec. 1993, Exhibit 3 to Plaintiff's Memorandum in Opposition to Union Defendants' Motion for Summary Judgment.)

The annual objection notice informs employees (1) of the types of expenditures that are classified as chargeable to objectors; and (2) of the approximate proportion of union expenditures in each category, so that the employee can estimate the amount of the advance reduction payment that would be received upon objecting. The notice further explains that objectors will be given a full explanation of the calculation of the fee reduction and an opportunity to challenge that calculation in arbitration. The notice also explains that employees must make their objection during a one-month window period, in January of each year, or during the first thirty (30) days in which an objector is required to pay fees to the union.

Nielsen received his dues objector notice for the 1995 year in November of 1994. Beginning in the year 1995, the request to

become a fee objector can be made by regular mail service, as well as by certified mail. Also, the period during which employees can object runs from December 1, 1994, to January 31, 1995, instead of just during the month of January, as provided in the December 1993 notice. Plaintiff did file an objection for the 1995 year as mandated by the Unions' rebate plan.

Since July 5, 1994, Mercy Ambulance has continued to deduct from Plaintiff Nielsen's salary an amount of money equal to the full union dues that voluntary members of the unions pay. IAM International uses some of the money collected from Plaintiff Nielsen for nonrepresentational activities. However, IAM International acknowledges that an objection by Nielsen was properly filed for the year 1995, and that Nielsen will receive the 1995 reduction to which he is entitled.[2] There are approximately one-half million employees currently represented by IAM-affiliated unions, holding their membership in over 1300 local unions or lodges affiliated with IAM. Operating IAM's *Beck* system costs in excess of $200,000.00 each year.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed

verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512; *In re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.*, 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

So that the district court may readily determine whether there are genuine issues of material fact, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party con-

---

**2.** The court notes that the facts relating to the 1995 dues objector policy and Nielsen's 1995 objection are merely background, as the claims in this case relate to the 1994 dues objector policy and the unions' conduct during 1994.

tends there is no genuine issue. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record all material facts to which the non-movant contends there are exists a genuine issue necessary to be litigated. *See Waldridge v. American Hoechst Corp. et al.*, 24 F.3d 918 (7th Cir.1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 249–51, 106 S.Ct. at 2511. However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained," and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank*, 704 F.2d 361, 367 (7th Cir.1983).

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512.

Because no genuine issues of material fact exist in the case at hand, the court can decide the Motions for Summary Judgment as a matter of law.

## DISCUSSION

The first claim for relief in Nielsen's Complaint is made jointly against both Local 2569 and Mercy Ambulance. Plaintiff Nielsen claims that,

> Defendant Local Lodge 2569, in concert with Mercy Ambulance, has violated the National Labor Relations Act and the fiduciary duty of fair representation that it owes to plaintiff Nielsen ... by negotiating and maintaining [the] union security clause.... That clause is facially invalid because it purports to require the Plaintiff, as a condition of his employment, to pay more than "that portion of union dues and fees attributable to the union's representational activities." (citations omitted)

(Complaint ¶ 20.) The plaintiff further claims that the union security clause is facially invalid because it misrepresents the extent and actual limits of the obligation which may be imposed upon them, and by negotiating and maintaining this clause subsequent to *Beck*, Local 2569 has not acted toward Plaintiff and other employees with complete honesty and good faith, but has acted arbitrarily and dishonestly by overstating the limits of their obligation to the union. (Complaint ¶ 21.) Finally, in the first claim for relief, Plaintiff states that "Mercy Ambulance, in concert with Defendant Local Lodge 2569, has violated the National Labor Relations Act, as construed by *Beck*, by negotiating and maintaining a union security clause which requires Plaintiff Nielsen, as a condition of his employment, to pay more than 'that portion of union dues and fees attributable to the union's representational activities.'" (Complaint ¶ 22.)

The Plaintiff's second claim for relief alleges that the Union Defendants have enforced the union security provision by requiring the Plaintiff to continue, as a condition of his employment, to pay amounts equal to the dues paid by voluntary union members. (Complaint ¶ 23.) The Plaintiff claims that enforcement of the union security clause violates the duty of fair representation because it forces Nielsen to pay in excess of his *pro rata* share of the unions' cost of representation, and thereby imposes an obligation which may not be forced upon Nielsen. Niel-

sen further alleges that Local 2569 and IAM International have not acted toward the Plaintiff with complete honesty and good faith, but have acted arbitrarily and dishonestly toward him and have discriminated against him for impermissible purposes. (Complaint ¶ 24.)

## I. The Union Security Clause Is Not Facially Invalid.

■ The court construes Plaintiff's first claim for relief as an allegation that Local 2569, in concert with Mercy Ambulance, has violated its duty of fair representation by negotiating and maintaining a union security agreement clause which purportedly requires Nielsen, as a condition of his employment, to pay more than that portion of union dues and fees attributable to the union's representational activities. While direct challenges under § 8(a)(3) are subject to the primary jurisdiction of the National Labor Relations Board ("NLRB"), see San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959) ("When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted."), federal courts may decide the merits of a § 8(a)(3) claim "insofar as such a decision [is] necessary to the disposition of [plaintiff's] duty-of-fair-representation challenge." Communications Workers of America v. Beck, 487 U.S. 735, 743, 108 S.Ct. 2641, 2647, 101 L.Ed.2d 634 (1988).

In Beck, plaintiff-employees claimed that the union failed to represent their interests fairly by negotiating and enforcing an agreement that allowed the exaction of funds for purposes that did not serve the employees' interests and in some cases were contrary to their personal beliefs. 487 U.S. at 743, 108 S.Ct. at 2647–48. The necessity of deciding the scope of § 8(a)(3) in Beck arose because the union sought to defend itself on the ground that § 8(a)(3) authorized such an agreement. 487 U.S. at 743, 108 S.Ct. at 2648. Under those circumstances, the Supreme Court held that "the Court of Appeals had jurisdiction to decide the § 8(a)(3) ques-

tion raised by the [employees'] duty-of-fair-representation claim." 487 U.S. at 744, 108 S.Ct. at 2648.

■ Likewise, in the present case plaintiff has alleged that Local 2569 violated its duty of fair representation by negotiating and maintaining a union security agreement clause which is facially invalid because it purportedly requires Nielsen to pay more than that portion of union dues and fees attributable to the union's representational activities. Defendant Unions have responded that the clause is valid under § 8(a)(3). Like Beck, "under these circumstances ... [we] have jurisdiction to decide the § 8(a)(3) question raised by respondents' duty-of-fair-representation claim." 487 U.S. at 744, 108 S.Ct. at 2648.

Section 8(a)(3) of the NLRA provides in pertinent part that,

> (a) It shall be an unfair labor practice for an employer—
>
> (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: Provided, That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization ... to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later.... Provided further, That no employer shall justify any discrimination against an employee for nonmembership in a labor organization ... if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership....

29 U.S.C. § 158(a)(3). Thus, Congress explicitly allowed for employers to make agreements with unions requiring union membership as a condition of employment under certain circumstances.

In *Beck*, the Supreme Court interpreted this statute and held the following:

> Taken as a whole, § 8(a)(3) permits an employer and a union to enter into an agreement requiring all employees to become union members as a condition of continued employment, but the "membership" that may be so required has been "whittled down to its financial core." (citations omitted) The statutory question presented in this case, then, is whether this "financial core" includes the obligation to support union activities beyond those germane to collective bargaining, contract administration, and grievance adjustment. We think it does not.

487 U.S. at 745, 108 S.Ct. at 2648. The *Beck* Court, in an opinion authored by Justice Brennan, discussed extensively the similarities between § 8(a)(3) of the NLRA and § 2, Eleventh of the RLA, referring to them as "statutory equivalents," 487 U.S. at 745, 108 S.Ct. at 2649, and noted that in both statutes, "Congress authorized compulsory unionism only to the extent necessary to ensure that those who enjoy union-negotiated benefits contribute to their cost." 487 U.S. at 746, 108 S.Ct. at 2649. Thus, in arriving at its decision in *Beck*, the Court relied heavily on its prior decisions in *Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961) ("[Section] 2, Eleventh contemplated compulsory unionism to force employees to share the costs of negotiating and administering collective agreements, and the costs of the adjustment and settlement of disputes," but that it was not Congress' intent "to provide the unions with a means for forcing employees, over their objection, to support political causes which they oppose."); and *Ellis v. Brotherhood Railway, Airline and Steamship Clerks*, 466 U.S. 435, 447–48, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428 (1984) (" 'Congress' essential justification for authorizing the union shop' limits the expenditures that may properly be charged to nonmembers under § 2, Eleventh to those 'necessarily or reasonably incurred for the purpose of performing the duties of an exclusive [bargaining] representative.' ")

Relying on these cases and the legislative history of § 8(a)(3) of the NLRA and § 2, Eleventh of the RLA, the Supreme Court concluded that

> § 8(a)(3), like its statutory equivalent, § 2, Eleventh of the RLA, authorizes the exaction of only those fees and dues necessary to "performing the duties of an exclusive representative of the employees in dealing with the employer on labor management issues."

*Beck*, 487 U.S. at 762–63, 108 S.Ct. at 2657.

The holding of *Beck* did not, as plaintiff contends, pertain to the facial validity of a union-security agreement, but rather to the *enforcement* of such an agreement. The Supreme Court noted that "we have never before delineated the precise limits § 8(a)(3) places on the *negotiation and enforcement* of union-security agreements ..." 487 U.S. at 744, 108 S.Ct. at 2648. Again, there is no reference to determining the facial validity of the language contained in the agreement; the focus is on the what interpretation the union gives to the language of the agreement.

Additionally, the two cases that the Supreme Court relies heavily upon in *Beck*— *Street* [3] and *Ellis*—expressly state that they were not deciding the facial validity of the agreements at issue. The *Street* Court found: "[T]he union-shop agreement itself is not unlawful ..." 367 U.S. at 771, 81 S.Ct. at 1801. In *Ellis*, the Court noted: "[Petitioners] do not contest the legality of the union shop as such, nor could they.... They do contend, however, that they can be *compelled to contribute* no more than their pro rata share ..." 466 U.S. at 439, 104 S.Ct. at 1887–88 (emphasis added) (citations omitted).

In a recent United States Court of Appeals case from the D.C. Circuit, the court addressed a union-security agreement requiring bargaining unit employees to become and remain "members of the Union in good standing." *IUE v. NLRB*, 41 F.3d 1532 (D.C.Cir.1994). In *IUE*, the court held that the facts in the case did not make out a

---

**3.** The *Beck* court stated, "Our decision in *Street*, however, is far more than merely instructive here: we believe it is controlling, for § 8(a)(3) and § 2, Eleventh are in all material respects identical." 487 U.S. at 745, 108 S.Ct. at 2649.

breach of the duty of fair representation, as there was no basis in the record to support the NLRB's finding that the Union engaged in bad faith conduct. 41 F.3d at 1538. In addressing petitioner's argument that the union-security agreement was facially invalid, the D.C. Circuit stated the following:

> [Petitioner's] contention is without merit. Contrary to his claim, *Pattern Makers*[' *League v. NLRB*, 473 U.S. 95, 105 S.Ct. 3064, 87 L.Ed.2d 68 (1985) ] and *Beck* in no way compel the conclusion that union-security agreements requiring "membership in the union in good standing" are unlawful on their face. *Beck* speaks only to the level of dues an employee may lawfully be required to pay under a union-security agreement. *Pattern Makers* stands only for the proposition that unions may not require full union membership as a condition of employment and may not restrict an employee's right to resign from full membership in the union. *Neither case has anything to do with what language is permissible in a union-security agreement* and, as such, neither case supports [petitioner's] claim.

41 F.3d at 1539 (emphasis added). As specifically noted by the D.C. Circuit, *Beck* has nothing to do with what language is permissible in a union-security agreement, but addresses only the amount of dues an employee may be required to pay under a union-security agreement. *Id.*

The plaintiff tries to distinguish *IUE* from the present situation. First, Plaintiff quotes the following passage from *IUE,*

> In fact from this date forward unions are on notice that they risk breaching their duty of fair representation if they adopt union security provisions of the sort at issue here without appropriate "notice" to employees who are covered by such provisions.

41 F.3d at 1534, and concludes that the D.C. Circuit recognized the illegality of "overly expansive union security clauses" in future cases. (Plaintiff's Memorandum in Support of the Motion for Summary Judgment, p. 13, n. 7.) This passage, however, only indicates that the unions may risk breaching their duty of fair representation, not that union security agreements may be struck as facially invalid. With regard to the facial validity of the agreement, the court states in the very same paragraph as the above-quoted passage that "there is no basis for [petitioner's] claim that the union-security provision at issue in this case is facially invalid under Supreme Court precedent." 41 F.3d at 1534; *see also id.* at 1538–39. Furthermore, the quoted passage from *IUE* states that unions risk breaching their duty if they adopt such clauses *without* appropriate notice to employees. Here, the employees were given appropriate notice through annual publication in *The Machinist.*

Plaintiff also claims that *IUE* is "poorly reasoned and internally inconsistent" because it describes *Beck* as the Supreme Court's "most recent pronouncement in this area," 41 F.3d at 1535, and then later states that *Beck* has nothing to do with "what language is permissible in a union security agreement." 41 F.3d at 1539. The failure to see the consistency in these statements further evidences Plaintiff's misinterpretation of *Beck.* *Beck* still is the most recent Supreme Court case on this issue, holding that "§ 8(a)(3) does not oblige employers 'to support union activities beyond those germane to collective bargaining, contract administration, and grievance adjustment.'" 41 F.3d at 1535 (quoting *Beck,* 487 U.S. at 745, 108 S.Ct. at 2648–49). Yet there is a crucial difference between what the union actually enforces against employees and what language in a collective bargaining agreement is facially valid. *Beck* did not reach the latter issue. *IUE* is not, as Plaintiff suggests, "poorly reasoned and internally inconsistent," but is an accurate application of the *Beck* holding.

Plaintiff cites a recent Eighth Circuit case, *Bloom v. National Labor Relations Board,* 30 F.3d 1001 (8th Cir.1994), for his position that the union security clause should be stricken from the agreement. The union security clause at issue in *Bloom* reads as follows:

> All Employees of the Employer subject to the terms of this Agreement shall, as a condition of continued employment, become and remain members in good standing in the Union, and all such Employees

subsequently hired shall make application and become members of the Union within thirty-one (31) days.

*Bloom v. National Labor Relations Board,* 30 F.3d 1001, 1002 (8th Cir.1994). The court in *Bloom* noted that the Union did not advise Bloom that he could object to having union dues and fees spent on nonrepresentational activities and be charged only the percentage spent on representational activities. *Id.* "Instead, Local 12 advised Bloom that the collective bargaining agreement required that he be a member of the union and that if he did not complete the membership application and the dues checkoff card Local 12 would request that Group Health terminate him." *Id.* The Eighth Circuit concluded that, "[b]ecause the overly broad union security clause was unlawfully interpreted and applied, an adequate remedy in this case requires expunction of the offending clause." *Id.* at 1004.

The facts in *Bloom* are inapposite to those in the present case. Key to the Eighth Circuit's decision was the fact that the Union did not advise Bloom that he could object to having his dues spent on nonrepresentational activities. In the case at hand, Nielsen was advised by the Union of his right to object and the procedures for objecting. The clause was expunged in *Bloom* because the Eighth Circuit found that it was "unlawfully interpreted and applied" by the Union. In the present case, the clause was not unlawfully interpreted and applied. Contrary to Plaintiff's contentions, *Bloom* is not applicable to this case.

Additionally, *Price v. Auto Workers Local 571,* 927 F.2d 88 (2nd Cir.1991), does not support Nielsen's position. In *Price,* the Second Circuit concluded that the Union did not violate its duty of fair representation because post-*Beck* procedures implemented by the Union were "more than adequate" to meet the fair representation standard: the procedures employed were not arbitrary, discriminatory, or implemented in bad faith. 927 F.2d at 92. *Price* did not address the facial validity of the union security agreement, and Nielsen's attempt to cite *Price* for such a proposition is not well-taken. Moreover, in *Price,* the Second Circuit affirmed a judgment *dismissing* the dues objectors' claims, and left intact and enforceable the union security clause, a conclusion that hardly supports Nielsen's claims.

Finally, Plaintiff cites *NLRB v. Manitowoc Engineering Co.,* 909 F.2d 963 (7th Cir.1990), in support of his position that the clause in the union security agreement is facially invalid because it overstates the maximum obligation that may be required of employees. The collective bargaining agreement in *Manitowoc* required employees who were promoted to supervisor status to maintain union membership (or obtain a withdrawal card) in order to preserve the right to return to work in the bargaining unit with the seniority that accrued during their earlier employment. 909 F.2d at 963. The Seventh Circuit affirmed the NLRB's conclusion that the agreement was invalid on its face because § 8(a)(3) prohibits "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 909 F.2d at 967 (quoting 29 U.S.C. § 158(a)(3)). The NLRB found that with respect to seniority and employment, the agreement "mandates disparate treatment with respect to employment for employees returned to the bargaining unit on the basis of whether or not those employees made the required acquisition." 909 F.2d at 963. The NLRB further found that this disparate treatment encourages union membership. *Id.* The Seventh Circuit held that "nothing seems more reasonable than the Board's conclusion that the distinction created by [the agreement] results in disparate treatment—discrimination—in regard to protected employment (and protected employees)." 909 F.2d at 969.

*Manitowoc* is distinguishable from the present case and does not support Nielsen's position. The union security agreement clause here has to do with dues requirements, while the portion of the agreement at issue in *Manitowoc* dealt with the unique situation where an employee of the bargaining unit was promoted out of the unit and the steps the employee needed to take (while not a member of the unit) in order to retain seniority upon re-entering the unit. In addi-

tion, the union security clause at hand does not cover individuals who are no longer represented by the Union, and it does not require membership in the union as a condition precedent to the retention of previously accrued seniority rights. Therefore, *Manitowoc* does not support the plaintiff's position.

 In sum, the union security agreement clause is not facially invalid. Nothing in the language of § 8(a)(3) or in the case law supports the plaintiff's proposition that the clause is illegal on its face. Therefore, defendant Unions' Motion for Summary Judgment is granted.

II. *The Union Defendants Have Not Violated Their Duty of Fair Representation By Enforcing the "Window Period" for Filing Beck Objections.*

In his second claim for relief, Nielsen asserts that enforcement of the union security clause violates the duty of fair representation because it forces him to pay in excess of his *pro rata* share of the unions' cost of representation, and thereby imposes an obligation which may not be forced upon him. Specifically, the Plaintiff challenges the one-month window period during which employees must file their *Beck* objection to the payment of full dues, claiming that this is an arbitrary process implemented by the Union and one which is not authorized by *Beck.* (Plaintiff's Memorandum in Support of Motion for Summary Judgment, p. 15.)

Union Defendants claim that the thirty-day window is critical to the Union's ability to administer the objector program, because without a limited period for filing and processing objections the program would be unworkable. Each annual objection necessitates revisions in the records of three organizations, each of which is entitled to a percentage of the fees which must be reduced: the local union, the intermediate union or district lodge, and the International Union. Objections can potentially come from any of the 1300 local unions, representing approximately 500,000 employees, and currently it costs IAM over $200,000.00 to operate its dues reduction system. Under the IAM procedures, each objector has an opportunity to challenge the fee reduction calculation in a

union-funded arbitration procedure. Without the thirty-day window period, the Union Defendants claim that they would be unable to process objector claims in an orderly fashion, or to conduct the required audits on any schedule.

 A union's duty of fair representation is a judicially implied duty which arises from 29 U.S.C. §§ 158(b), 159(a) (1988), Sections 8(b) and 9(a) of the NLRA. *Price,* 927 F.2d at 92. "This duty requires a union to 'represent fairly the interest of all bargaining-unit members during the negotiation, administration and enforcement of collective-bargaining agreements.'" *Id.* (quoting *International Bhd. of Elec. Workers v. Foust,* 442 U.S. 42, 47, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698 (1979)). A breach of the duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). As the Supreme Court noted in *Beck,* this duty "extends not only to the negotiation of the collective-bargaining agreement itself but also to the subsequent enforcement of that agreement, including the administration of any grievance procedure the agreement may establish." *Beck* 487 U.S. at 739, 108 S.Ct. at 2645 (citing *Vaca v. Sipes,* 386 U.S. at 177, 87 S.Ct. at 910). The duty of fair representation allows a wide range of reasonableness, and review of the Union Defendants actions must be highly deferential. *Air Line Pilots v. O'Neill,* 499 U.S. 65, 67–69, 76–78, 111 S.Ct. 1127, 1130, 1135, 113 L.Ed.2d 51 (1991). The court can find a breach of this duty only if the Union's actions "can be fairly characterized as so far outside a 'wide range of reasonableness,' . . . that [those actions] are wholly 'irrational' or 'arbitrary.'" *Id.* (citations omitted). In *O'Neill,* the Supreme Court stated,

> Congress did not intend judicial review of a union's performance to permit the court to substitute its own view of the proper bargain for that reached by the union. Rather, Congress envisioned the relationship between the courts and labor unions as similar to that between the courts and the legislature. Any substantive examina-

tion of a union's performance, therefore, must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.

*Id.* at 78, 111 S.Ct. at 1135.

Beyond conclusory statements that the 30–day window period is arbitrary and discriminatory, Nielsen fails to address the legal standard for the duty of fair representation and does not explain *how* the window period is arbitrary, discriminatory, or in bad faith. Nielsen does not demonstrate how the utilization of a 30–day window period is "so far outside a 'wide range of reasonableness ... that [the Unions' actions] are 'irrational' or 'arbitrary.'" *See id.* Nielsen suggests that the Unions could operate the dues objector system without the window period, but this does not demonstrate that the current system is "irrational" or "arbitrary." In response to the Unions' claim that without the window period, it would be impossible to implement any sensible arbitration process, Nielsen states that he has never attempted to invoke the arbitration procedure. Yet this argument does not change the fact that the Unions are responsible for implementing a system that covers all the represented employees. In addition, Nielsen attacks the annual notice in *The Machinist* as being "typed in ultra-fine print, and buried in the unions' internal magazine...." (Plaintiff's Memorandum in Opposition to Union Defendants' Motion for Summary Judgment, p. 14.) Upon review of an actual copy of the December 1993 issue of *The Machinist*, the court finds that the notice is well-marked, as it is listed in the table of contents on the second page, and is printed in legible type and highlighted in green on the seventh page. (The entire magazine is only eight pages in length.) In sum, Nielsen has done nothing to demonstrate that the Union Defendants' actions were arbitrary, discriminatory, or in bad faith, such that they breached their duty of fair representation.

This conclusion is supported by the decisions of courts that have already reviewed window periods. In *Abrams v. Communications Workers of America,* 818 F.Supp. 393, 403 (D.D.C.1993), on appeal, No. 93–7171 (D.C.Cir.1995), Communications Workers of America ("CWA") had instituted a fee objection policy for nonmembers through which nonmembers would be notified of their right to file objections in the March issue of the *CWA News,* a publication sent to all employees. 818 F.Supp. at 397. The policy called for objections to be made during the month of May. *Id.* The court concluded the following in granting summary judgment in favor of CWA on this claim:

CWA's requirement that nonmembers repeat their objections every year during a specified time period provides an efficient yet fair system for objection. Because objection is not to be presumed, *Street,* 367 U.S. at 774, 81 S.Ct. at 1802–03, CWA has a valid basis for requiring yearly objections. Nor can the objection period be never ending if CWA wishes to resolve nonmembers' disputes, tally its budget, and put the advance reduction process into motion. CWA's procedure is not arbitrary but reasoned, and its basis in law shows the procedure also is not discriminatory or in bad faith. The court concludes that CWA's requirement of annual objections during a limited window period does not violate its duty of fair representation.

818 F.Supp. at 403.

■ Likewise, IAM's procedure that requires dues objectors to make their objections during a thirty-day window is "not arbitrary but reasoned, and its basis in law shows the procedure also is not discriminatory of in bad faith." *See id.* Union Defendants have not violated their duty of fair representation by requiring objections to be filed during a limited window period. As the Defendant Unions assert, and as the court in *Abrams* recognized, the objection period cannot be never-ending if the Union wishes to process objectors' claims, tally its budget, conduct audits, and resolve nonmembers' disputes in an orderly fashion.

Further support for Union Defendants' position is found in *Kidwell v. Transportation Com. Intern. Union,* 731 F.Supp. 192 (D.Md. 1990), in which the court held that the annual renewal of objections and the thirty-day window for objecting to the Union's proposed fee were not "unduly restrictive of plaintiff's

rights." *Id.* at 205. In finding that the thirty-day window for making objections was "not unreasonable," the court noted the following:

> [T]he union is not required to provide the least restrictive procedure imaginable. The union, as well as the employees, have an interest in the prompt resolution of obligations and disputes. The 30–day window facilitates prompt resolution and leaves no doubt as to the timing or the requirement for making an objection.

*Id.* (citing *Andrews v. Education Ass'n of Cheshire,* 653 F.Supp. 1373, 1378 (D.Conn.) (approving a 30–day objection period), *aff'd,* 829 F.2d 335 (2d Cir.1987)).

Additionally, in a Memorandum issued by the NLRB General Counsel, the NLRB appears to endorse window periods for filing objections, so long as the annual notice to employees sets forth that information and the time period is "reasonable." *See* NLRB General Counsel Memorandum, "Guidelines Concerning *CWA v. Beck,* [487] U.S. [735] [108 S.Ct. 2641, 101 L.Ed.2d 634], 128 LRRM 2729 (June 29, 1988)," (November 15, 1988). Likewise, Nielsen and other employees in the collective bargaining unit receive annual notice through *The Machinist;* and a month-long period for objecting is a reasonable time period.

Plaintiff Nielsen contends that "there is no basis in *Beck*" for imposing a window period for objections to member dues. However, in *Beck* the union had no dues objector procedures at all, as it (the union) was arguing that there was no dues objector right under the NLRA. *Beck* does not address what type of procedures a union may adopt in administering a dues objector program, other than stating that such claims should be resolved under the deferential duty-of-fair-representation standard. Thus, plaintiff's reliance on *Beck* for this proposition is misplaced.

Nielsen also claims that unions may not restrict resignations from union membership to a specific time of year, and that the Unions' "window period" policy has practically nullified Nielsen's right to resign at will, a right upheld in *Pattern Makers.* Yet it is not the case that the Union has restricted Nielsen's ability to resign, which is an entirely different issue than that presently before the court. In fact, there is no dispute that Nielsen resigned on July 5, 1994, and his resignation was accepted immediately by Local 2569's president, Rebecca Smith, as indicated in a July 22, 1994 letter to Nielsen.

Finally, Plaintiff cites a decision of an NLRB Administrative Law Judge, *California Knife and Saw Works (International Association of Machinists & Aerospace Workers),* JD(SF)–052–92 (1992), in which the ALJ found that,

> the Unions' policy of restricting the time when union member resignees may invoke *Beck* rights to the month of January each year is an overly broad restriction on employees' Section 7 right to refrain from supporting their collective bargaining representatives' nonrepresentational expenditures. I further find that such restrictions violate the [Unions'] duty of fair representation . . .

(Page 41 of decision.) This court does not find the ALJ's opinion persuasive in its application of the deferential duty-of-fair-representation standard.

As noted earlier, a breach of the duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes,* 87 S.Ct. 903, 916, 386 U.S. 171, 190, 17 L.Ed.2d 842 (1967). Also, the duty of fair representation allows a wide range of reasonableness, and review of the Union's actions must be highly deferential. *Air Line Pilots v. O'Neill,* 499 U.S. 65, 67–69, 76–78, 111 S.Ct. 1127, 1130, 1135, 113 L.Ed.2d 51 (1991). Nielsen has in no way demonstrated that the Union was arbitrary, discriminatory, or acting in bad faith by enforcing the procedures for making *Beck* objections, including implementing the thirty-day time window. Additionally, the case law supports that such a window period does not violate the unions' duty of fair representation. Accordingly, Plaintiff Nielsen's Motion for Summary Judgment is denied and Union Defendants' Motion for Summary Judgment is granted.

*CONCLUSION*

For the foregoing reasons, Defendant Unions' Motion for Summary Judgment is GRANTED and Plaintiff Nielsen's Motion for Summary Judgment is DENIED. In addition, Plaintiff's Request for Oral Argument is DENIED.

