Gary A. BLOOM, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 93–3483.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1994.

Decided July 27, 1994.

Hugh L. Reilly, Springfield, VA, argued for petitioner.

Deborah E. Shrager, Washington, DC, argued for respondent.

Before WOLLMAN, MAGILL, and BEAM, Circuit Judges.

WOLLMAN, Circuit Judge.

Gary A. Bloom petitions for review of an order of the National Labor Relations Board ("the Board"). We reverse and remand to the Board for further proceedings.

## I.

In June 1991, Bloom was employed by Group Health, Inc., as a clerical worker. The Office and Professional Employees International Union, Local 12 ("Local 12") was the exclusive bargaining representative of Group Health's clerical employees. The collective bargaining agreement between Group Health and Local 12 contained a union security clause:

All Employees of the Employer subject to the terms of this Agreement shall, as a condition of continued employment, become and remain members in good standing in the Union, and all such Employees subsequently hired shall make application and become members of the Union within thirty-one (31) days.

On September 27, 1991, Group Health withheld union dues and initiation fees from Bloom's paycheck without his authorization. Local 12 then sent Bloom a letter requesting that he complete and sign a membership application and a voluntary dues checkoff card. In response, Bloom informed Local 12 that he had not completed the membership application or dues checkoff card because he first wanted a breakdown of how the union dues were spent. Local 12 provided Bloom with a categorization of union expenditures, but it did not inform Bloom of the percentage of union dues and fees that was spent on nonrepresentational activities. Nor did Local 12 advise Bloom that he could object to having union dues and fees spent on nonrepresentational activities and be charged only the percentage spent on representational activities. Instead, Local 12 advised Bloom that the collective bargaining agreement required that he be a member of the union and

that if he did not complete the membership application and the dues checkoff card Local 12 would request that Group Health terminate him. During the remainder of 1991, Group Health continued to withhold union dues and fees from Bloom's paycheck. On January 30, 1992, however, Local 12 refunded to Bloom in full the amounts that had been withheld from his paychecks without authorization.

Bloom filed unfair-labor-practice charges against Group Health and Local 12 on December 23, 1991. The charges alleged that Group Health and Local 12 had violated Bloom's rights and the rights of similarly situated employees under the National Labor Relations Act by negotiating and enforcing a provision of a collective bargaining agreement requiring employees to become and remain union members in good standing as a condition of employment and by withholding union dues and fees from Bloom's paycheck without his authorization. The charges further alleged that Local 12 had failed to advise employees of the percentage of dues spent on nonrepresentational activities and of their right to become objecting nonmembers.

The Board's General Counsel issued a consolidated complaint on Bloom's charges. Waiving a hearing before an administrative law judge, the parties entered into a stipulation of facts and filed a motion to transfer the proceedings to the Board, which the Board granted. While the charges were pending before the Board, Group Health and Local 12 entered into settlement agreements which the General Counsel concluded remedied the alleged unfair labor practices. The General Counsel then filed with the Board a motion for approval of the settlement agreements. Bloom was not a party to the settlement agreements, and he opposed the motion for approval. The Board entered an order approving the settlement agreements and dismissing the complaint. Bloom then filed this petition for review.

## II.

Bloom challenges the Board's order approving the settlement agreements on several grounds. We first consider his argument

that the agreements should not have been approved because they do not expunge the union security clause that gave rise to Bloom's unfair-labor-practice charges.

■ The Board has a longstanding policy of encouraging the settlement of labor disputes. *NLRB v. International Bhd. of Elec. Workers, Local Union 112*, 992 F.2d 990, 992 (9th Cir.1993). Despite this policy, however, the Board is not required to approve all settlement agreements, even if the General Counsel advocates approval. *Independent Stave Co.*, 287 N.L.R.B. 740, 741 (1987). "Settlement is not an end in and of itself, however. Of primary importance is the broad authority vested in the Board under Section 10(c) of the Act to prevent and remedy unfair labor practices." *Pottsville Bleaching & Dyeing Co.*, 301 N.L.R.B. 1095, 1095 (1991). The Board will not approve a settlement that does not effectuate the purposes and policies of the Act. *Independent Stave*, 287 N.L.R.B. at 741.

■ In deciding whether to approve a settlement, the Board examines various factors:

(1) whether the charging party(ies), the respondent(s), and any of the individual discriminatee(s) have agreed to be bound, and the position taken by the General Counsel regarding the settlement; (2) whether the settlement is reasonable in light of the nature of the violations alleged, the risks inherent in litigation, and the stage of the litigation; (3) whether there has been any fraud, coercion, or duress by any of the parties in reaching the settlement; and (4) whether the respondent has engaged in a history of violations of the Act or has breached previous agreements resolving unfair labor practice disputes.

*Id.* at 743. Applying these factors and considering all the circumstances, we must decide whether the settlements that the Board approved effectuate the purposes and policies underlying the Act.[1]

■ One of the policies of the Act is voluntary unionism. *Pattern Makers' League v. NLRB*, 473 U.S. 95, 104, 105 S.Ct. 3064, 3069–70, 87 L.Ed.2d 68 (1985). To eliminate "the serious abuses of compulsory unionism", Congress, in the Taft–Hartley Act of 1947, abolished closed shop agreements, which required that employers hire only persons who were union members. *NLRB v. General Motors Corp.*, 373 U.S. 734, 740–41, 83 S.Ct. 1453, 1458, 10 L.Ed.2d 670 (1963). Congress recognized, however, that "without such agreements, many employees would reap the benefits that unions negotiated on their behalf without in any way contributing financial support to those efforts." *Communications Workers v. Beck*, 487 U.S. 735, 748, 108 S.Ct. 2641, 2650, 101 L.Ed.2d 634 (1988). Congress therefore included a provision permitting union security clauses to ensure that there would be no employees who received the benefits of union representation without paying for them. *Oil, Chem. & Atomic Workers Int'l Union v. Mobil Oil Corp.*, 426 U.S. 407, 416, 96 S.Ct. 2140, 2144–45, 48 L.Ed.2d 736 (1976). Section 8(a)(3) provides in part, "[t]hat nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization ... to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later." 29 U.S.C. § 158(a)(3).

■ In accordance with Congress's intent, the Supreme Court has held that the only aspect of union membership that can be required as a condition of employment pursuant to a section 8(a)(3) union security provision is the payment of dues. *Pattern Makers' League v. NLRB*, 473 U.S. 95, 106 n. 16, 105 S.Ct. 3064, 3071 n. 16, 87 L.Ed.2d 68 (1985) (citing *Radio Officers' Union of Commercial Telegraphers Union v. NLRB*, 347

---

1. We can only assume that the Board determined that the agreements furthered the purposes and policies underlying the Act, for the Board's order approving the agreements does not explain the Board's rationale or discuss the *Independent Stave* factors. Because we conclude that the Board should not have approved the settlements,

however, we need not decide whether the Board's failure to explain its reasoning necessitates remand. *Cf. Oil, Chem. & Atomic Workers Int'l Union v. NLRB*, 806 F.2d 269, 274 (D.C.Cir. 1986) (remanding case to Board because order did not explain the Board's reasons for approving settlement).

U.S. 17, 41, 74 S.Ct. 323, 336, 98 L.Ed. 455 (1954)). "Full union membership thus no longer can be a requirement of employment. If a new employee refuses formally to join a union and subject himself to its discipline, he cannot be fired." *Id.* at 106, 105 S.Ct. at 3071. Moreover, an employee's obligation under a union security clause to pay unions dues and fees is limited. In *Communications Workers v. Beck,* the Supreme Court held that section 8(a)(3) does not permit a union to exact funds from objecting nonmember employees for any activities unrelated to its duties as an "exclusive representative of the employees in dealing with the employer on labor-management issues." 487 U.S. 735, 762–63, 108 S.Ct. 2641, 2657, 101 L.Ed.2d 634 (1988) (quoting *Ellis v. Brotherhood of Ry., Airline & Steamship Clerks,* 466 U.S. 435, 448, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428 (1984)). Thus, an employee cannot be obligated as a condition of employment to support "union activities beyond those germane to collective bargaining, contract administration, or grievance adjustment." *Id.* at 745, 108 S.Ct. at 2648.

■ Although a union security clause cannot be used as "an instrumentality for the indirect enforcement of nonfinancial union regulations," *Local 54, Hotel Employees & Restaurant Employees Int'l Union (Atlantis Casino Hotel),* 291 N.L.R.B. 989, 992 (1988), the clause at issue in this case, specifically the "member in good standing" language, implies otherwise. An employee who is unfamiliar with the Supreme Court cases discussing union security provisions is likely to conclude that the clause requires exactly what it says—"[membership] in good standing in the Union." We fail to see how an employee can discern from such language that he cannot be terminated if he does not wish to become a formal, full-fledged union member burdened with all of the obligations of union membership and subject to the full reach of the union's disciplinary measures. Indeed, the Board has recognized that language in a union security clause requiring that employees become and remain "members of the Union in good standing" is ambiguous, and at a minimum, leaves employees confused about the extent of their obligation. *International Union of Electronic, Elec., Salaried, Mach.*

*& Furniture Workers, Engineers Local 444 (Paramax Systems Corp.),* 311 N.L.R.B. 1031, 1037 (1993), *petition for review pending,* No. 93–1373 (D.C.Cir.). According to the Board, such a clause

> fails to apprise employees of the lawful limits of their obligation. Indeed, a literal reading of the clause would lead an employee unversed in labor law to believe that employees were obliged to join the Union and satisfy all of the requirements for membership as a condition of employment. This literal reading of the clause would chill the exercise of employees' Section 7 rights to refrain from union membership and support.

*Id.* at 1041.

Local 12 did in fact literally interpret the union security clause and threaten to seek Bloom's termination if he did not become a union member. Section 8(a)(3), as interpreted by the Supreme Court, however, does not permit such threats. Accordingly, we conclude that the settlement agreements are inadequate, for they do not delete the misleading union security clause that the charged parties unlawfully interpreted and applied.

The Board contends that the settlement agreements adequately remedy the violations alleged in the complaint because the charged parties agreed to post notices informing employees that they would "no longer give effect to the provision in [the] contract . . . that requires employees become and remain 'members in good standing' as a condition of continued employment unless such provision also provides that employees need only pay the Union's periodic dues and initiation fees." During the sixty-day period for which the agreements require that the notices be posted, the employees may be able to determine the lawful extent of their union obligation. We note, however, that employees subject to a union security clause cannot be obligated as a condition of their employment to pay *all* union dues and initiation fees, as the above notice seems to imply. Rather, to protect themselves from discharge pursuant to a union security clause, employees need only pay that portion of union dues and fees attribut-

able to the union's representational activities. *Beck*, 487 U.S. at 762–63, 108 S.Ct. at 2657. After the expiration of the sixty-day notice period, the agreements provide for no measures to inform employees that the lawful extent of their union obligation is actually much less than the clause states. While some employees may recall the notice, there is no guarantee that all will. Thus, because a literal application of the "member in good standing" language is unlawful, posting a temporary notice stating that the collective bargaining agreement will not be enforced as it is drafted is not sufficient to protect Group Health's employees' section 7 right to refrain from union activities.

Because the overly broad union security clause was unlawfully interpreted and applied, an adequate remedy in this case requires expunction of the offending clause.[2] Accordingly, we deny enforcement of the Board's order approving the settlement agreements and dismissing the consolidated complaint and remand the case to the Board for further proceedings consistent with this opinion.

**2.** Having concluded that the Board should not have approved the settlement agreements because they do not expunge the union security clause, we need not consider the other grounds upon which Bloom challenges the agreements.