Connie M. SCHREIER, Plaintiff,

v.

**BEVERLY CALIFORNIA CORPORATION; et al., Defendants.**

Civ. No. 4–94–1033.

United States District Court, D. Minnesota.

July 21, 1995.

**226**

Glenn M. Taubman, National Right to Work, Springfield, VA, and Darel F. Swenson, Plymouth, MN, for plaintiff.

Paul Zech, Minneapolis, MN, for defendants Beverly California Corp. and Beverly Enterprises–Minnesota, Inc.

Roger Jensen, Minneapolis, MN, for defendant Minnesota's Health Care Union.

### MEMORANDUM AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

URBOM, Senior District Judge.

The facts are undisputed.

The collective bargaining agreement between Beverly Enterprises, doing business as Colonial Manor of Balaton, (hereinafter referred to as the Employer), and Minnesota Health Care Union, SEIU Local 113, AFL–CIO/CLC (hereinafter referred to as the Union), provides that all employees shall, as a condition of employment, "become, be and remain members of the Union in good standing ..." "In good standing" is defined to mean:

"The payment of a standard initiation fee and standard regular monthly dues, all as applies uniformly to all members of the Union in the bargaining unit covered by this contract."

The plaintiff is a cook, employed by Colonial Manor of Balaton and has been so employed since about March 1, 1994, within a bargaining unit represented by the Union. When she did not join the Union or pay any dues or fees after she was hired, the Union in September, October, and November 1994, sent her letters, insisting that she join the Union and threatened her dismissal from employment unless she paid $87.50, which was an amount equal to the full dues and initiation fees paid by voluntary members of the Union. On November 30, 1994, a fourth letter was sent her, explaining that she had

"the right to pay a service fee in lieu of Union dues and initiation fees which is more fully described on the document attached hereto as Enclosure 1, titled 'Service Fee Notice'."

The initiation fee was described as being $30 for employees working 40 hours or more per two-week pay period and $20 for employees working less than that. Monthly dues were $25 for persons working 20 or more hours per two-week pay period and "one times the rate of pay" for persons working less than 20 hours per two-week pay period. The service fee was "based on the Union's expenditures for collective bargaining, grievance and arbitrations, contract administration and representation, as well as other relevant matters affecting the terms and conditions of your employment" and amounted, said the Service Fee Notice, to 91 percent of the regular monthly dues.

The Union insisted that the employer discharge the plaintiff, but an agreement was reached, whereby the plaintiff paid and is paying the Union-calculated "fees" (91 percent of the dues) into an escrow account pending the outcome of the litigation. Both the plaintiff and the Union have filed motions for summary judgment to which the employer takes no position, although accedes to the plaintiff's position that the union security language of the collective bargaining agreement, quoted above, is illegal and should be expunged.

■ *Communications Workers of America v. Beck*, 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988), and *Bloom v. National Labor Relations Board*, 30 F.3d 1001 (8th Cir.1994), govern the case. The union security clause is facially invalid under section 8 of the National Labor Relations Act (29 U.S.C. § 158) because it requires more from the plaintiff than can be required under the *Beck* and the *Bloom* cases. *Beck* held that

§ 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3) authorizes "the exaction of only those fees and dues necessary to 'performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues.'" *Id.* at 762–63, 108 S.Ct. at 2657.

In *Bloom v. National Labor Relations Board, supra,* the Eighth Circuit Court of Appeals said:

> "We note, however, that employees subject to a union security clause cannot be obligated as a condition of their employment to pay *all* union dues and initiation fees.... Rather, to protect themselves from discharge pursuant to a union security clause, employees need only pay that portion of union dues and fees attributable to the union's representational activities. *Beck,* 487 U.S. at 762–63, 108 S.Ct. at 2657."

*Bloom,* 30 F.3d at 1004–05 (citations omitted, emphasis in original).

The Union cites *International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers v. National Labor Relations Board,* 41 F.3d 1532 (D.C.Cir. 1994), but that case cannot be determinative in this circuit. It may be distinguishable, but, whether it is or not, I shall rely upon the *Bloom* decision.

■ The Union further argues that the fourth letter sent Mrs. Schreier corrects the misstatements of the first three letters and, thus, the Union's motion for summary judgment should be granted. I disagree. The union security clause itself is unlawful and has the clear capacity to mislead employees. Moreover, the "curative" letter does not comport with the *Beck* opinion, because it asserts that the Union may charge the plaintiff for "lobbying for collective bargaining legislation or to effect changes affecting working conditions before Congress, state legislatures, state and federal agencies, and local boards, commissions and councils." This is broader than permitted under either the test used by Justices Blackmun, White and Stevens and Chief Justice Rehnquist or by Justices Scalia and Kennedy in *Lehnert v. Ferris Faculty Association,* 500 U.S. 507, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991). As was done in *Bloom,*

therefore, the judgment must expunge the unlawful provision in the collective bargaining agreement.

IT IS ORDERED that:

1. the plaintiff's motion for summary judgment is granted; and

2. the defendant Union's motion for summary judgment is denied.

## JUDGMENT

Pursuant to the memorandum and order on motions for summary judgment,

IT IS ORDERED that:

1. the union security clause in the Employment Agreement between Colonial Manor of Balaton and SEIU, Local 113, AFL–CIO/CLC, effective October 1, 1993, through May 31, 1995, § 6.4, is declared to be void on its face and unenforceable;

2. the defendants shall promptly rescind and expunge the union security clause, section 6.4, from that contract and notify all employees in the bargaining unit of such change in the contract;

3. the defendant Local 113 breached its duty of fair representation by its attempts to enforce its union security clause, section 6.4 of the contract, specifically by sending to the plaintiff its letters dated September 28, 1994, October 19, 1994, November 2, 1994, and November 30, 1994; and

4. within thirty days of the date of this order, the defendants shall refund all dues or fees collected from the plaintiff under the authority of the void and unenforceable union security clause, section 6.4 of the contract.