**Roland BUZENIUS, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**United Paperworkers International Union; United Paperworkers International Union, Local 1033, Intervenors.**

No. 96–5139.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 7, 1997.

Decided Sept. 8, 1997.

John C. Scully, (argued and briefed), National Right To Work Legal Defense Foundation, Springfield, VA, for Petitioner.

Aileen A. Armstrong, (briefed), Deputy Associate Gen. Counsel, Deborah E. Shrager, (argued and briefed), National Labor Relations Board, Appellate Court Branch, Washington, DC, Margaret Gaines Neigus, (briefed), National Labor Relations Board, Washington, DC, for Respondent.

Peter M. Fox, Kircher, Robinson, Newman & Welch, Cincinnati, OH, James B. Coppess, (argued and briefed), AFL–CIO Legal Department, Washington, DC, for Intervenor.

Before: SILER and BATCHELDER, Circuit Judges; HULL, District Judge.[*]

BATCHELDER, Circuit Judge.

In this case we must decide whether a union-security clause requiring employees to become and remain "members of the Union in good standing" as a condition of continued employment, without concurrent definition in the collective bargaining agreement, is facial-

---

[*] The Honorable Thomas G. Hull, United States District Judge for the Eastern District of Tennes-see, sitting by designation.

ly valid. For the following reasons, we hold that it is not. We therefore **REVERSE** the order of the National Labor Relations Board.

## I. BACKGROUND

The facts of this case are undisputed. The United Paperworkers International Union, AFL–CIO, CLC, and its Local 1033 (collectively the "Union") are the exclusive collective bargaining representatives of Weyerhaeuser Paper Company's ("Company") production and maintenance employees. The Union and the Company entered into a collective bargaining agreement ("CBA") containing the following union-security clause:

> It is agreed that all employees who are members of the Union shall remain members of the Union in good standing. All new employees, who after completion of thirty (30) days shall become and remain members of the Union in good standing as a condition of employment for the term of this Agreement [sic].

The CBA does not define "member in good standing." Additionally, the Union has no procedure to provide employees with information regarding their right to refuse to join the Union or pay full dues, so long as they pay that portion of dues related to the Union's core representational activities. *See Communications Workers v. Beck,* 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988); *NLRB v. General Motors Corp.,* 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963).

Petitioner Roland Buzenius works for the Company and was a member of the Union. On April 30, 1993, petitioner informed the Union by letter of his immediate resignation from the Union's membership in accordance with the Supreme Court's decision in *Pattern Makers' League v. NLRB,* 473 U.S. 95, 105 S.Ct. 3064, 87 L.Ed.2d 68 (1985). Petitioner also asserted his right under *Communications Workers v. Beck,* 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988), to object to supporting financially the Union's non-collective bargaining activities. The Union, however, ignored petitioner's letter and continued to deduct dues from petitioner's paycheck in the same amount it had prior to petitioner's resignation. Moreover, in No-

vember 1993, the Union mailed petitioner a new Union-membership card.

Petitioner filed a charge against the Union with the National Labor Relations Board ("NLRB" or "Board"). The Board ruled that the Union violated § 8(b)(1)(A) of the National Labor Relations Act ("NLRA" or "Act"), 29 U.S.C. § 158(b)(1)(A), by failing to acknowledge petitioner's resignation from the Union; failing to inform petitioner and all other Company employees of their rights under *NLRB v. General Motors Corp.,* 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963), and *Beck;* and collecting and using petitioner's full union-membership fees. *United Paperworkers Int'l Union,* 320 N.L.R.B. 349 (1995). The Board issued an order requiring the Union to cease and desist from the unfair labor practices and to undertake a number of remedial actions, including notifying each Company employee in writing of his rights under *General Motors* and *Beck* and that the only required condition of employment under the union-security clause is the payment of any uniform initiation fee and the "financial core" membership service fees. The Board also ordered the Union to post notice at Union business offices and local meeting halls for sixty consecutive days stating that the Union will not restrain and coerce Company employees from exercising their rights. The Board, however, refused to order the Union to expunge or modify the union-security clause. Petitioner timely appealed.

## II. DISCUSSION

Petitioner challenges the Board's order to the extent that it allows the union-security clause to remain in the CBA. Petitioner argues that the plain language of the clause patently misleads employees regarding their obligations as defined by the Supreme Court. Therefore, petitioner claims, the clause is facially invalid and the Board abused its discretion in failing to order its expunction from the CBA. We agree.

### A.

██ Section 10(c) of the Act empowers the Board, upon finding that a party has

committed an unfair labor practice, to issue an order requiring the offending party to "cease and desist from such unfair labor practice, and to take such affirmative action . . . as will effectuate the policies" of the Act. 29 U.S.C. § 160(c). "This statutory command vests in the Board the primary responsibility and broad discretion to devise remedies that effectuate the policies of the Act, subject only to limited judicial review." *NLRB v. Joyce Western Corp.*, 873 F.2d 126, 128 (6th Cir.1989) (citing *Sure–Tan, Inc. v. NLRB*, 467 U.S. 883, 898–99, 104 S.Ct. 2803, 2812–13, 81 L.Ed.2d 732 (1984)). Accordingly, our review is limited to determining whether the Board has abused its discretion in fashioning the remedial order. *Id.*

### B.

■ Section 8(a)(3) of the Act makes it an unfair labor practice for an employer to discriminate in hiring, tenure, or terms or conditions of employment for the purpose of encouraging or discouraging membership in a labor organization. 29 U.S.C. § 158(a)(3). Standing alone, this provision seems to prohibit union-security clauses. Clearly an employer "encourages" union membership by agreeing to such a clause in a CBA. Section 8(a)(3), however, goes on to state that "nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization . . . to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later." *Id.* In other words, the Act explicitly permits an employer to enter into a CBA that contains a union-security clause requiring employees to acquire and retain "membership" in a union as a condition of employment.

"Membership" as used in § 8(a)(3), however, does not mean membership in the colloquial sense, *i.e.*, formal union membership. Indeed, over the years the Supreme Court has significantly limited the concept of union membership for purposes of union-security clauses. In *NLRB v. General Motors Corp.*, 373 U.S. 734, 742, 83 S.Ct. 1453, 1458, 10 L.Ed.2d 670 (1963), the Court whittled the "membership" that may be required under § 8(a)(3) down to its "financial core," stating that "the burdens of membership upon which employment may be conditioned are expressly limited to the payment of initiation fees and monthly dues." *See also Radio Officers' Union of Commercial Telegraphers Union v. NLRB*, 347 U.S. 17, 41–42, 74 S.Ct. 323, 335–36, 98 L.Ed. 455 (1954) (stating that union-security clauses cannot be used for "any purpose other than to compel payment of union dues and fees"). Further, in *Pattern Makers' League v. NLRB*, 473 U.S. 95, 106, 105 S.Ct. 3064, 3070, 87 L.Ed.2d 68 (1985), the Court explained that the union-security clauses authorized by § 8(a)(3) require only that employees pay dues; full union membership may not be a condition of employment. Indeed, such a requirement would be inconsistent with the Act's policy of voluntary unionism. *See id.* at 104, 106, 105 S.Ct. at 3069, 3070; *see also Bloom v. NLRB*, 30 F.3d 1001, 1003–04 (8th Cir.1994).

The Court revisited the concept of "financial core" union membership in *Communications Workers v. Beck*, 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988). At issue in *Beck* was "whether th[e] 'financial core' includes the obligation to support union activities beyond those germane to collective bargaining, contract administration, and grievance adjustment." *Id.* at 745, 108 S.Ct. at 2648. The Court held that it does not. Section 8(a)(3) allows a union to exact only "those fees and dues necessary to 'performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues.' " *Id.* at 762–63, 108 S.Ct. at 2657–58 (quoting *Ellis v. Brotherhood of Ry., Airline & Steamship Clerks*, 466 U.S. 435, 448, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428 (1984)). In short, § 8(a)(3) of the Act "permits an employer and an exclusive bargaining representative to enter into an agreement requiring all employees in the bargaining unit to pay periodic union dues and initiation fees [related to the union's representational activities] as a condition of continued employment, whether or not the employees otherwise wish to become union members." *Id.* at 738, 108 S.Ct. at 2644. The *Beck* Court did not address the

question of what language is permissible in a union-security clause.

To summarize, § 8(a)(3) of the Act explicitly allows union-security clauses that require union "membership" as a condition of employment. 29 U.S.C. § 158(a)(3). Read literally, this section authorizes an employer and a labor organization to enter into a CBA compelling all employees to join the union and pay full union dues. However, according to the Supreme Court, § 8(a)(3) means no such thing. All that may be required under a union-security clause is the payment of fees and dues related to core representational activities.

### C.

■ The issue in this case is not whether union-security clauses are valid in general, which they clearly are. *See id.; Beck*, 487 U.S. at 738, 108 S.Ct. at 2644. Rather, the issue is whether, in light of the language of § 8(a)(3) and the subsequent Supreme Court decisions interpreting that language, a union-security clause that requires "membership in good standing," without concurrent definition of that term in the collective bargaining agreement, is valid. We hold that it is not.

### 1.

Few federal courts have squarely addressed the facial validity of union-security clauses like the one presented by the instant case. Indeed, our research reveals, and the parties have directed our attention to, decisions from only two federal circuit courts. In *International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers v. NLRB*, 41 F.3d 1532 (D.C.Cir.1994) ("*IUE*"), the District of Columbia Circuit upheld a union-security clause requiring all members of the bargaining unit to join and remain "members of the Union in good standing as a term and condition of employment." *Id.* at 1535 (emphasis omitted). The court held the clause to be facially valid for two reasons. First, although the Supreme Court's decisions in *Pattern Makers'* and *Beck* whittled down the membership that may be required under a § 8(a)(3) union-security clause, neither decision addressed the permissible language of such a clause.

*Id.* at 1539. Second, the plaintiff presented no evidence indicating that the union actually required "full" membership or extracted funds from unwilling employees unrelated to the union's core representational activities. *Id.; see also Abrams v. Communications Workers*, 59 F.3d 1373, 1378–79 (D.C.Cir. 1995) (applying *IUE* without discussion).

Similarly, in *Nielsen v. International Ass'n of Machinists & Aerospace Workers*, 94 F.3d 1107 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1426, 137 L.Ed.2d 536 (1997), the Seventh Circuit held that a union-security clause stating that "[a]s a condition of continued employment, all employees ... shall either become a member of the Union and pay dues thereto, or ... shall pay an amount equal to the Union's initiation fee and ... the regular monthly dues and fees in effect for other employees in the bargaining unit who are members of the Union" was facially valid. *Id.* at 1108–09. The court agreed with the reasoning of the District of Columbia Circuit and concluded that *Beck* does not call into question the facial validity of such clauses. *Id.* at 1115. The *Nielsen* court also noted that the Board has never cast doubt on the facial validity of union-security clauses. *Id.* at 1114–15.

Although it did not specifically address the facial validity of the union-security clause at issue, the Eighth Circuit, in *Bloom v. NLRB*, 30 F.3d 1001 (8th Cir.1994), provided considerable insight into the problems such clauses create. The CBA in *Bloom* contained a union-security clause stating that employees must "become and remain members in good standing in the Union" as a condition of continued employment. *Id.* at 1002. Pursuant to the CBA, plaintiff's employer withheld initiation fees and union dues from plaintiff's paycheck without his authorization. When the union mailed plaintiff a letter asking him to complete and sign a union-membership application, plaintiff refused, demanding that the union first provide him with a breakdown of how the union dues were spent. The union provided plaintiff with a categorization of union expenditures, but did not outline the percentage of dues and fees that were spent on nonrepresentational activities. Moreover, the union did not advise plaintiff of his rights

under *Beck.* The union did, however, inform plaintiff that unless he completed the application, it would seek termination of his employment. Plaintiff subsequently filed unfair-labor-practice charges with the Board, which the union and plaintiff's employer settled. On appeal to the Eighth Circuit, plaintiff challenged the propriety of the settlement, arguing that it was inadequate because it allowed the union-security clause to remain in the bargaining agreement. *Id.* at 1002–03.

The Eighth Circuit agreed with plaintiff. The court stated that the clause was patently misleading: "An employee who is unfamiliar with the Supreme Court cases discussing union security provisions is likely to conclude that the clause requires exactly what it says—'[membership] in good standing in the Union.'" *Id.* at 1004 (alteration in original); *see also Schreier v. Beverly California Corp.,* 892 F.Supp. 225, 227 (D.Minn.1995) (applying *Bloom* to invalidate a union-security clause that required "membership in good standing" and noting that "[t]he union security clause itself is unlawful and has the clear capacity to mislead employees"). In other words, read literally, the clause leads employees to believe that they must become full-fledged union members as a condition of employment, a conclusion directly at odds with Supreme Court precedent. In order to correct this problem, the union offered to post notice for sixty days informing employees that they need only pay the union's periodic dues and initiation fees. The court found, however, that because a literal application of the "member in good standing" provision is unlawful, posting a temporary notice that the union-security clause will not be enforced as drafted is not enough to protect employees' right to refrain from union activities. *Bloom,* 30 F.3d at 1005. Because the union-security clause was unlawfully interpreted and applied, and because the settlement agreement did not expunge the misleading clause, the court held the settlement agreement inadequate. *Id.*

### 2.

We agree with our sister circuits' assertion that the Supreme Court has never explicitly delineated the permissible language of a § 8(a)(3) union-security clause. Indeed, the Court has never squarely faced that issue. We do not agree, however, with the contention that the Supreme Court's silence validates a union-security clause requiring "membership in good standing" without further explanation in the CBA. We believe that in light of the Court's decisions whittling § 8(a)(3) "membership" down to its financial core, such clauses, without concurrent definition in the CBA itself, are facially invalid. To permit the CBA to say what it cannot literally mean does violence both to the Act's policy of voluntary unionism and to principles of contract interpretation.

One of the Act's core policies is that of voluntary unionism. *Pattern Makers',* 473 U.S. at 104–06, 105 S.Ct. at 3069–70; *Bloom,* 30 F.3d at 1003 (citation omitted). Although employees subject to a § 8(a)(3) union-security clause are obligated to pay dues and fees related to the union's core representational activities, *Beck,* 487 U.S. at 762–63, 108 S.Ct. at 2657–58 they remain free to join or refuse to join the union. *Pattern Makers',* 473 U.S. at 106, 105 S.Ct. at 3070. A union-security clause requiring "membership in good standing" as a condition of employment, however, leaves employees with the distinct impression that they are not free to make that choice. The plain language of such clauses is clear— join the union or be fired. As the Eighth Circuit stated in *Bloom,* 30 F.3d at 1004: "We fail to see how an employee can discern from such language that he cannot be terminated if he does not wish to become a formal, full-fledged union member burdened with all of the obligations of union membership and subject to the full reach of the union's disciplinary measures." Similarly, though the Board has found union-security clauses of this type to be facially valid, *see Rochester Mfg. Co.,* 323 N.L.R.B. No. 36, 154 L.R.R.M. (BNA) 1249, 1251 (March 12, 1997), it has recognized their deceptive nature:

> Thus, although the clause is capable of lawful construction, it can also be interpreted as requiring more from [bargaining] unit employees than is imposed by statute. Indeed, it is likely that employees unversed in the intricacies of Section 8(a)(3) and interpretative decisions will literally interpret the clause as requiring full

membership and all attendant financial obligations, e.g., assessments. At a minimum, they will be confused about their obligations.

*International Union of Electronic, Elec., Salaried, Mach. & Furniture Workers,* 311 N.L.R.B. 1031, 1037 (1993) (footnote omitted), *enforcement denied,* 41 F.3d 1532 (1994). A "membership in good standing" union-security clause is inconsistent with the Act's policy of voluntary unionism because it misleads employees into believing that they may not exercise free choice in the matter of union membership.

Allowing a union-security clause requiring union "membership in good standing" to remain unmodified in the CBA turns normal contract interpretation on its head. Under the Board's remedial order, employees must consult extraneous sources and subsequent notices in order to discover that they have a right not to do what the plain language of the clause requires. Because the clause does not mean what it literally says, and because its literal application is unlawful, the clause has no place in the CBA. Subsequent notice of the employees' actual rights under § 8(a)(3), whether by posting temporary notice or by providing employees with one-time written notice, will not rectify the situation. *See Bloom,* 30 F.3d at 1005. Once Company employees receive their one-time notice, the Board's order provides no other measure to inform employees of their rights and lawful obligations under the union-security clause. However, the union-security clause, which cannot mean what it says and cannot be applied as drafted, remains in the CBA, the on-going contract by which the employees' relationship to the employer is governed. We cannot agree with such a result.

We recognize that Congress, through § 8(a)(3), has sanctioned union-security clauses requiring union "membership" as a condition of employment. *See* 29 U.S.C. § 158(a)(3). We also recognize that a union-security clause requiring "membership in good standing" comports with the *literal* meaning of § 8(a)(3). However, as previously discussed, § 8(a)(3) does not mean what it literally says. Indeed, as the Seventh Circuit has recently pointed out, the Supreme Court has glossed the statute in a way that virtually inverts the literal meaning. *Wegscheid v. Local Union 2911, Int'l Union, United Auto., Aerospace & Agric. Implement Workers,* 117 F.3d 986, 990 (7th Cir.1997). The Court has not simply carved out exceptions to § 8(a)(3)'s language; it has ruled that the most that may be required under that section is the payment of dues and fees related to core representational activities. *Beck,* 487 U.S. at 762–63, 108 S.Ct. at 2657–58. The plain language of § 8(a)(3) and its actual meaning in light of Supreme Court precedent are so dissimilar that "the only realistic explanation for the retention of the statutory language in collective bargaining agreements . . . is to mislead employees about their right not to join the union." *Wegscheid,* 117 F.3d at 990 (citations omitted).

In the present case, the Union has wholly failed to persuade us otherwise. The Union has provided no legitimate reasons explaining why it needs to include "membership in good standing" language, without further definition, in the CBA. Nor has the Union explained how requiring that the clause be modified to reflect § 8(a)(3)'s true meaning and employees' true obligations would impose an undue hardship. For these reasons, and because of the clause's misleading nature, the Union may not hide behind § 8(a)(3) to justify this practice. *See id.* at 991.

## III. CONCLUSION

The union-security clause in the instant case requires employees to become and remain "members of the Union in good standing." Because the express language of this clause is inconsistent with employees' right to refuse to join the Union or pay full dues, so long as they pay that portion of dues related to core representational activities, and because the clause cannot be interpreted without resort to material outside of the CBA, we hold that the clause is facially invalid. We therefore hold that the Board abused its discretion in refusing to order that the clause requiring that employees be "members of the Union in good standing" either be modified to define that requirement or be removed from the CBA. Accordingly, we **RE-**

VERSE the order of the National Labor Relations Board.