# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-1582

_____

| | | |
|---|---|---|
| Gary A. Bloom, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Petition for Review of an |
| | * | Order of the National Labor |
| National Labor Relations Board, | * | Relations Board. |
| | * | |
| Respondent, | * | |
| | * | |
| Office and Professional Employees | * | |
| International Union, AFL-CIO Local 12, | * | |
| | * | |
| Intervenor on Appeal. | * | |

_____

Submitted: March 11, 1998

Filed: August 7, 1998

_____

Before WOLLMAN, BEAM, and HANSEN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Gary A. Bloom, on behalf of himself and those similarly situated, petitions for review of a decision and order of the National Labor Relations Board issued pursuant to our remand in Bloom v. N.L.R.B., 30 F.3d 1001, 1005 (8th Cir. 1994) (Bloom I). The Office and Professional Employees International Union, Local 12, has intervened

on behalf of the Board.  We deny enforcement of the decision and order, and we remand with directions.

## I.

During the summer of 1991, Bloom was hired as a clerical worker with Group Health, Inc.  His position placed him within a bargaining unit represented by the union.  The collective bargaining agreement between Group Health and the union contained the following union security clause:

ARTICLE 1
UNION RECOGNITION AND UNION SHOP

. . . .

1.03    All Employees of the Employer subject to the terms of this Agreement shall, as a condition of continued employment, become and remain members in good standing in the Union, and all such Employees subsequently hired shall make application and become members of the Union within thirty-one (31) days.

A few months after Bloom was hired, Group Health began to withhold union dues and initiation fees from his paycheck without his authorization and remit them to the union.  In October, the union sent Bloom the following letter:

Our office has been informed that you are now working for Group Health, Inc.  We have never received an Application for Membership or a Voluntary Dues Checkoff Card from you.  I am enclosing them and would like you to fill them out, sign them and return them to our office as soon as possible so that we can place you in the Union.  We need these for our records and also to send to our International Office.

Bloom sent a reply to the union stating that he had received the application form but had not yet decided if he wanted to join. He also stated that he had not authorized any deduction from his paycheck. He requested an itemization of how union dues were spent and reimbursement for the dues that had already been withheld. The union responded as follows:

> As stated in the New Member Packet, it is a part of the Collective Bargaining Agreement between Office and Professional Employees International Union, Local 12, and Group Health, Inc. that you must become a member of the Union thirty-one days after you are hired. **If you choose not to be a member of Local 12, I shall have no alternative but to request GHI that your employment be terminated**. It is my sincere hope that you will choose to join Local 12 and return the cards to this office as we have requested.

(Emphasis supplied). In the meantime, Group Health continued to withhold union dues and fees from Bloom's paychecks and deposit them in union coffers.

In December of 1991, Bloom filed charges with the Board on behalf of himself and "similarly situated discriminatees" against Group Health and the union, alleging unfair labor practices under the National Labor Relations Act (Act), 29 U.S.C. § 158 (1973 & Supp. 1998). Bloom challenged the facial validity of the union security clause. He alleged that Group Health and the union had enforced the illegal membership obligations required by that clause upon himself and others by deducting union dues without authorization, refusing to inform employees of their right to decline union membership and pay only a reduced fee associated with representational costs, and threatening those who decline union membership with termination.

In January of 1993, the parties' stipulation of facts and motion to transfer the proceedings to the Board were approved. While the case was pending, Group Health and the union entered into a unilateral settlement agreement with the Board's General

Counsel. Over Bloom's objections, the Board approved the settlement by unpublished order on September 29, 1993. The agreement purported to remedy the unfair labor practices detailed by Bloom by requiring the union to post notices "in conspicuous places in and about the employer's plant where they shall be maintained for 60 consecutive days from the date of posting." The notice essentially stated that Group Health would no longer deduct and the union would no longer accept union dues without authorization. It further stated that neither party would interfere with Group Health employees' rights under the Act and that the provision of the collective bargaining agreement requiring union membership would no longer be enforced "unless such provision also provides that employees need only pay the Union's periodic dues and initiation fees." The public notice also took care to single out Bloom as the employee who had filed charges with the Board. Bloom's complaint was then summarily dismissed.

Bloom petitioned for review pursuant to section 10(f) of the Act, 29 U.S.C. 160(f). We reversed the Board's approval of the settlement. See Bloom I, 30 F.3d at 1005. In particular, we concluded "that the settlement agreements are inadequate, for they do not delete the misleading union security clause that the charged parties unlawfully interpreted and applied." Id. at 1004. We also expressly rejected the idea that the presence of the unlawful clause in the bargaining agreement could be remedied by posting notice that the clause would not be enforced. See id. at 1005 ("posting a temporary notice stating that the collective bargaining agreement will not be enforced as it is drafted is not sufficient to protect Group Health's employees' section 7 right to refrain from union activities"). Indeed, we concluded that the remedial notice itself was misleading, because it purported to enforce a provision requiring membership but providing "that employees need only pay the Union's periodic dues and initiation fees." Id. at 1004. Such language is itself contrary to law, we noted, because employees can never be required to become union members or "pay *all* union dues and initiation fees," but rather "need only pay that portion of union dues and fees attributable to the union's representational activities." Id. at 1004-05 (emphasis in original). Thus, "[b]ecause

the overly broad union security clause was unlawfully interpreted and applied," we ordered that it be expunged from the collective bargaining agreement. Id. at 1005. We remanded the case to the Board for further proceedings.

On remand, Group Health and the union entered into a second settlement agreement with the General Counsel. The revised settlement provided that Group Health and the union would amend their contract to delete the provision requiring that employees become members in good standing and substitute a provision providing that union membership is required, but only to the extent that employees must pay the union's periodic dues and initiation fees. Bloom objected to the revised settlement, contending that it did not comport with our instructions in Bloom I. Nonetheless, the Board approved it and again dismissed Bloom's complaint. See Group Health, Inc., 323 N.L.R.B. No. 31 (Feb. 27, 1997) (Group Health II). Bloom petitioned for review, seeking enforcement of our original mandate.

After the record and the parties' initial briefs were filed, the Board filed a motion requesting that we remand the matter so that the Board might reconsider its order in light of the Sixth Circuit's decision in Buzenius v. N.L.R.B., 124 F.3d 788 (6th Cir. 1997). We granted the motion and remanded the case, expressly retaining jurisdiction over Bloom's petition. The Board then granted a motion by the union and Group Health to amend the settlement agreement a third time. The third settlement deleted the "in good standing" phrase from the collective bargaining agreement and substituted the following union security clause:

> All Employees of the Employer subject to the terms of this Agreement shall, as a condition of continued employment, become and remain members in the Union, and all such Employees subsequently hired shall become members of the Union within thirty-one (31) calender days, within the requirements of the National Labor Relations Act. Union membership is required only to the extent that Employees must pay either (i) the Union's initiation fees and periodic dues or (ii) service fees which

-5-

in the case of a regular service fee payer shall be equal to the Union's initiation fees and periodic dues and in the case of an objecting service fee payer shall be the proportion of the initiation fees and dues corresponding to the proportion of the Union's total expenditures that support representational activities.

Over Bloom's objections, the Board approved the settlement and issued its Supplemental Decision and Order on Remand. See Group Health, Inc., 325 N.L.R.B. No. 49 (Feb. 2, 1998) (Group Health III).

## II.

We deal first with jurisdictional matters. Pursuant to our grant of its motion to file supplemental briefs on the eve of oral argument, the Board has raised an eleventh-hour challenge to our authority over this case. It asserts that Bloom is not a "person aggrieved" under section 10(f) of the Act, 29 U.S.C. § 160(f), and thus does not have standing to petition for review of its order. We do not agree. Whenever the Board enters a final order against a charged party to its review proceeding, that party is a "person aggrieved" under the Act and is entitled to seek direct review in the appropriate court of appeals. See International Union, United Auto., Aerospace & Agric. Implement Workers of America, AFL-CIO, Local 283 v. Scofield, 382 U.S. 205, 210 (1965). Similarly, "if the Board determines that a complaint should be dismissed, the charging party has a statutory right to review as a 'person aggrieved.'" Id.[1] Bloom

---

[1]See also Oil, Chemical & Atomic Workers Local Union No. 6-418, AFL-CIO v. N.L.R.B., 694 F.2d 1289, 1294-95 (D.C. Cir. 1982); N.L.R.B. v. Oil, Chemical & Atomic Workers Int'l Union, AFL-CIO, 476 F.2d 1031, 1036 (1st Cir. 1973); Annotation, Who is a "Person Aggrieved," Entitled, Under Section 10(f) of the Amended National Labor Relations Act, To Review of Final Order of National Labor Relations Board in Appropriate Court of Appeals, 1 A.L.R. Fed. 550 (1969 & 1997 Supp.).

is a charging party whose complaint was dismissed by the Board. As a result, he has express authorization from Congress to seek our review of the Board's order.

Although Bloom is clearly entitled to petition for review, he must also establish standing under Article III. See Wilcox Elec., Inc. v. Federal Aviation Admin., 119 F.3d 724, 727-28 (8th Cir. 1997); City of St. Louis v. Department of Transp., 936 F.2d 1528, 1532 (8th Cir. 1991). We conclude that he has done so. Bloom suffered the requisite "injury in fact" when union dues and fees were withheld from his paycheck without authorization. He has never entered into nor approved any settlement of his claims resulting from that incident. His injuries will not have been fully redressed until he has recovered not only the confiscated funds, but an appropriate award of interest to compensate for the period during which they were unlawfully utilized. See United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 690 n.14 (1973) (approving of concept that "an identifiable trifle is enough for standing to fight out a question of principle").[2]

Nonetheless, the Board asserts that Bloom lacks standing because, seven years after his initial complaint, he is no longer employed by Group Health, an argument

---

[2]An injury sufficient to confer standing upon a party need not be monetary in nature. For instance, Bloom's constitutional rights to free speech and association may have been implicated, and he may have been constructively discharged as the result of his reluctance to join the union. Cf. Lehnert v. Ferris Faculty Ass'n, 500 U.S. 507, 516-19 (1991) (discussing First Amendment implications of compulsory union dues); Clayton v. White Hall Sch. Dist., 778 F.2d 457, 459 (8th Cir. 1985) (discussing possibility of standing based upon "work environment" or "associational" injury). The necessary injury in fact might also be premised upon the union's violation of the Act itself. See Federal Election Comm'n v. Akins, 118 S. Ct. 1777, 1785-86 (1998) (identifying injury sufficient to confer standing resulting from violation of "statute which . . . does seek to protect individuals such as respondents from the kind of harm they say they have suffered").

more closely related to the question of mootness. From the beginning, Bloom has consistently maintained this action on behalf of himself and those "similarly situated" who also have suffered as a result of the union's illegal practices against those who prefer not to join. This is, in other words, a representative petition. Although it is true that one generally may not support jurisdiction by seeking to vindicate the legal rights of others, that is a judicially self-imposed limitation upon federal jurisdiction which has no roots in Article III. See United Food & Commercial Workers Int'l Union, Local 751 v. Brown Group, Inc., 50 F.3d 1426, 1429 n.3 (8th Cir. 1995) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)), rev'd on other grounds, 517 U.S. 544 (1996). Consequently, "[a] federal statute may give a putative plaintiff the right to bring suit, thus relieving him of the judicially-created, prudential standing requirements." Brown Group, 50 F.3d at 1429; see also Akins, 118 S. Ct. at 1783-84; Family & Children's Ctr., Inc. v. School City of Mishawaka, 13 F.3d 1052, 1059-60 (7th Cir. 1994). As the Supreme Court has recently observed, "[h]istory associates the word 'aggrieved' with a congressional intent to cast the standing net broadly -- beyond the common-law interests and substantive statutory rights upon which 'prudential' standing traditionally rested." Akins, 118 S. Ct. at 1783. We conclude that Congress intended to cast the standing net broadly here by authorizing "[a]ny person aggrieved" to seek review of an order by the Board under section 10(f) of the Act.

Because Congress's express grant of standing to aggrieved persons such as Bloom extends to the limits of that which is permitted by Article III, the typical gauntlet of prudential limitations stands as no obstacle to our duty to promote the efficient interests of justice and, in particular, to enforce our previous mandate regarding the union security clause. See Family & Children's Ctr., 13 F.3d at 1061; Akins, 118 S. Ct. at 1783-84; Brown Group, 50 F.3d at 1429. Thus, because Bloom seeks to vindicate the rights of all those currently affected by the facially invalid clause in the collective bargaining agreement, because he is the original charging party and a "person aggrieved" authorized by Congress to petition for review, and because he himself satisfies the minimum requirements for Article III standing, we conclude that his cause

-8-

is not moot. "To hold otherwise would frustrate the remedial purposes of the Act." N.L.R.B. v. Laborers Int'l Union of North America, AFL-CIO, Local 282, 567 F.2d 833, 836 (8th Cir. 1977); see also N.L.R.B. v. Modine Mfg. Co., 500 F.2d 914, 916 n.4 (8th Cir. 1974) (proceedings are not moot when settlement between employer and union contains cease and desist order and parties are "entitled to have the resumption of the unfair [labor] practice barred by an enforcement decree"); N.L.R.B. v. Douglas & Lomason Co., 443 F.2d 291, 294 (8th Cir. 1971).

## III.

In Bloom I, we made clear that, although "[t]he Board has a longstanding policy of encouraging the settlement of labor disputes," it must "not approve a settlement that does not effectuate the purposes and policies of the Act." 30 F.3d at 1003. One of the Act's primary policies, and a fundamental tenet underlying all of labor relations jurisprudence, is voluntary unionism, the notion that a person's job, or the terms of his employment, may never be conditioned upon membership in a labor union. See id. Enlisting in a union is a wholly voluntary commitment; it is an option that may be freely undertaken or freely rejected. Thus, section 7 of the Act guarantees employees the right to engage, or refrain from engaging, in activities in support of collective bargaining. 29 U.S.C. § 157. Section 8(a)(3) makes it an unfair labor practice to discriminate "in regard to hire or tenure of employment or any term or condition of employment" for the purpose of encouraging or discouraging membership in a labor union. 29 U.S.C. § 158(a)(3). Likewise, the Act imposes a duty of fair representation upon labor organizations, prohibiting them and their agents from restraining or coercing employees in the exercise of guaranteed rights. 29 U.S.C. § 158(b); see also Vaca v. Sipes, 386 U.S. 171, 177 (1967) (stating that union's status as exclusive bargaining representative gives rise to statutory obligation to serve interests of all employees "without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct").

Section 8(a)(3) of the Act provides:

> *Provided*, That nothing in this subchapter . . . shall preclude an employer from making an agreement with a labor organization . . . to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later.

29 U.S.C. § 158(a)(3). Read literally, this language would permit unions and employers to include within a collective bargaining agreement a provision that would require union membership as a condition of employment. As we pointed out in Bloom I, however, the Supreme Court has not given section 8(a)(3) a literal reading. 30 F.3d at 1003-04.

In Pattern Makers' League of North America, AFL-CIO v. N.L.R.B., 473 U.S. 95, 107 n.16 (1985), the Court noted that the payment of dues is the only aspect of union membership that can be required under section 8(a)(3); see also N.L.R.B. v. General Motors Corp., 373 U.S. 734, 742 (1963). In Communications Workers of America v. Beck, 487 U.S. 735, 762-63 (1988), the Court held that nonunion employees can be required to pay only those dues and fees associated with costs incurred by the union in association with its core representational activities. See also International Ass'n of Machinists & Aerospace Workers v. N.L.R.B., 133 F.3d 1012, 1015 (7th Cir. 1998); Vic Koenig Chevrolet, Inc. v. N.L.R.B., 126 F.3d 947, 951 (7th Cir. 1997). A union may insist upon nothing more from an employee and may not require membership in any sense. "This has been settled law for some time, and the only realistic explanation for the retention of the statutory language in collective bargaining agreements, as the courts have observed, is to mislead employees about their right not to join the union." Wegscheid v. Local Union 2911, 117 F.3d 986, 990 (7th Cir. 1997).

As set forth above, the clause under challenge here begins with the following statement:

> All Employees of the Employer subject to the terms of this Agreement shall, as a condition of continued employment, become and remain members in the Union, and all such Employees subsequently hired shall become members of the Union within thirty-one (31) calender days, within the requirements of the National Labor Relations Act.

This language is not simply misleading and coercive, it is repugnant to the Supreme Court's pronouncements in Beck and Pattern Makers and is in direct conflict with our mandate in Bloom I. Although *no* employee can be required to join the union, this provision turns truth upon its head and informs those it governs that *all* employees are required to become and remain union members. The confusing caveat that follows the offending clause contains nothing from which an employee might possibly glean the knowledge that he may decline to join the union. In any event, no subsequent qualifying language, however cleverly crafted, should be deemed sufficient to negative the unqualified command expressed in the first sentence of the challenged provision.[3] As Bloom can well attest, when an employee who is approached regarding union membership expresses reluctance, a union frequently will produce or invoke the collective bargaining agreement in an attempt to pressure him into signing up. The employee, unschooled in semantic legal fictions, cannot possibly discern his rights from a document that has been designed by the union to conceal them. In such a context, "member" is not a term of "art," as has been suggested to us, but one of deception. In

---

[3]See Buzenius, 124 F.3d at 792 ("To permit the [collective bargaining agreement] to say what it cannot literally mean does violence both to the Act's policy of voluntary unionism and to principles of contract interpretation"); Wegscheid, 117 F.3d at 990-91; Bloom I, 30 F.3d at 1004-05; but see Marquez v. Screen Actors Guild, Inc., 124 F.3d 1034, 1037-39 (9th Cir. 1997), cert. granted, 118 S. Ct. 1298 (March 23, 1998); International Union of Electronic, Elec., Salaried, Mach. & Furniture Workers, AFL-CIO v. N.L.R.B., 41 F.3d 1532, 1537-38 (D.C. Cir. 1994).

his concurrence to the Board's opinion, Chairman Gould conceded as much. See Group Health III, 325 N.L.R.B. No. 49 at 5 (Gould, concurring).

The settlement agreement approved by the Board on remand seems to have been calculated to evade both the letter and spirit of Bloom I. The Board's supplemental decision reflects a disregard of our directives. Accordingly, rather then simply remanding this case to the Board for further proceedings consistent with our opinion, we remand with specific instructions. See Iowa Utilities Bd. v. Federal Communications Comm'n, 135 F.3d 535, 541 (8th Cir. 1998) ("We have not only the power, but also a duty to enforce our prior mandate to prevent evasion").

## *INSTRUCTIONS AND ORDER*

The offending union security clause contained within the third settlement agreement shall be deleted in its entirety. In its stead, the following provision shall be inserted:

No employee shall be required to become or remain a member of the union as a condition of employment.

Each employee shall have the right to freely join or decline to join the union.

Each union member shall have the right to freely retain or discontinue his or her membership.

Employees who decline to join the union may be required, at a minimum, to pay a reduced service fee equivalent to his or her proportionate share of union expenditures that are necessary to support solely representational activities in dealing with the employer on labor-management issues.

No employee shall be discriminated against on account of his or her membership or non-membership in the union.

Moreover, we hereby serve notice that we will no longer uphold or enforce a union security clause that does not contain this language or reflect its undiluted equivalent.

The union and Group Health may agree to include, in a section that follows the foregoing language, a clause that further explains the various levels of membership and non-membership from which an employee is free to select. However, the agreement may contain no language that states or implies that an employee must join or become a member of the union (or remain a union member) in any sense or context. Before approving the agreement as so revised, the Board shall ensure that Bloom has been fully redressed for any fees or dues unlawfully withheld from his paycheck, including an appropriate award of interest thereon.

We deny enforcement of the Board's decision and order, and we remand the case to the Board for the inclusion of the above set forth language in the union security clause and for the entry of appropriate relief to Bloom.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-