In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 12-1973 & 12-1984

DOUGLAS RICHARDS, *et al.*,

*Petitioners*,

*v.*

NATIONAL LABOR RELATIONS BOARD,

*Respondent*,

and

UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY, ALLIED
INDUSTRIAL AND SERVICE WORKERS
INTERNATIONAL UNION, AFL-CIO/CLC, *et al.*,

*Intervenors-Respondents.*

On Petitions for Review of Decisions and Orders
of the National Labor Relations Board.
Nos. 25-CB-8891, 25-CB-9253,
25-CB-9254, 13-CB-18961, and 13-CB-18962.

ARGUED NOVEMBER 30, 2012—DECIDED DECEMBER 26, 2012

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge*. The labor unions in this consolidated appeal allowed non-union members who were part of their bargaining units to file objections if they wished to opt out of paying dues used to support political and other activities unrelated to collective bargaining, contract administration, or grievance adjustment, pursuant to *CWA v. Beck*, 487 U.S. 735 (1988). However, the unions required that these objections be renewed on an annual basis if the employee wanted to remain opted-out. Petitioners, nonmember employees who were part of the unions' bargaining units, filed separate unfair labor practice charges against the unions, arguing that these "annual renewal" policies violated the unions' duty of fair representation by placing an undue burden on objectors, and they sought an order striking down these policies. Although they did not seek refunds for themselves because the Petitioners were always opted-out, they also sought refunds for other employees who may have filed objections at one time, but failed to renew them. On appeal to the NLRB, the Board struck down the unions' annual renewal policies, but did not grant Petitioners' request for refunds on behalf of others.

Petitioners challenge the NLRB's decisions on the merits and also argue that the April 2012 final NLRB orders were not legitimate because the President's January 4, 2012 recess appointments of three of the five NLRB members were invalid. We do not reach these issues, however, because Petitioners lack standing to bring this appeal since the NLRB struck down the annual renewal policies which were the only source of

injury each Petitioner suffered. Because Petitioners no longer suffer an injury-in-fact and do not satisfy the statutory "aggrieved" requirement, *see* 29 U.S.C. § 160(f), we dismiss the petitions for review.

## I.  BACKGROUND

As the United States Supreme Court explained in *CWA v. Beck*, 487 U.S. 735, 738 (1988), the National Labor Relations Act ("NLRA") "permits an employer and an exclusive bargaining representative to enter into an agreement requiring all employees in the bargaining unit to pay periodic union dues and initiation fees as a condition of continued employment, whether or not the employees otherwise wish to become union members." However, it held that expending collected fees on activities "unrelated to collective bargaining, contract administration, or grievance adjustment" over the objections of fee-paying nonmember employees was a violation of the union's "duty of fair representation." *Id.* Those who make such objections are known as *Beck* objectors.

So policies were implemented by United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("USW"); the International Brotherhood of Electrical Workers, AFL-CIO ("IBEW"); and IBEW Local 34 to allow nonmember employees to file objections, which would result in a reduction of the *Beck* objectors' fees that funded nonrepresentational activities. The unions also required *Beck* objectors to renew their objections on

an annual basis if they wished to continue opting out of paying such fees.

On June 10, 2005, Douglas Richards, an Indiana resident who worked at a Cequent Towing Products factory in Goshen, Indiana, filed an unfair labor practice charge against USW, arguing that the "annual renewal" policy placed an undue burden on those who wish to maintain their *Beck* objector status without having to renew every year. Ronald R. Echegaray and David Yost—Pennsylvania and West Virginia residents, respectively—who worked at a Chemtura Corporation factory in West Virginia filed similar charges against USW on November 17, 2008. John Lugo, an Illinois resident and journeyman electrician who obtained employment with various employers through a hiring hall, also filed a charge on June 10, 2008, against IBEW and IBEW Local 34. These individuals (the "charging parties") strongly disagreed with contributing to what they perceived to be the union's political activities. Echegaray and Yost always annually renewed their objections, and Richards and Lugo were never required by the unions to annually renew their objections. But they all sought to put an end to the annual renewal policies so that they would no longer have to deal with or worry about having to renew their objections every year.

In response to the above charges, the NLRB General Counsel, who is independent from the NLRB and investigates unfair labor practice charges to determine whether to prosecute them, filed a complaint against IBEW and IBEW Local 34 on August 28, 2008, and a consolidated

complaint against USW on May 8, 2009. The NLRB General Counsel urged an end to the annual renewal policies, but the charging parties also asked for refunds for all employees who had once objected in the past but failed to renew. *See* 29 C.F.R. § 102.8 (charging parties considered to be parties to NLRB proceedings by default). Significantly, the charging parties were not alleging an entitlement to refunds for themselves, since they annually renewed their objections or were otherwise treated as *Beck* objectors at all relevant times. The ALJ assigned to hear the IBEW matter struck down IBEW Local 34's annual renewal policy on December 19, 2008, but declined to order refunds for all employees who had objected in the past but failed to renew their objections. The ALJ assigned to hear the USW matter dismissed the complaint in its entirety on August 6, 2009, and the decisions were appealed to the NLRB (alternatively, the "Board").

In August 2011, the Board ruled that the annual renewal policies violated the unions' duty of fair representation, and ordered that the annual renewal policies no longer be enforced. It did not, however, address the request for refunds. Later that month, the charging parties, not the NLRB General Counsel, filed motions for reconsideration, asking that refunds also be awarded. While the motions for reconsideration were pending, the terms of two Board members expired. This left only two seats filled, and at least a three-member quorum is required for the Board to take action. *See New Process Steel, L.P. v. NLRB*, 130 S. Ct. 2635, 2642 (2010). On January 4, 2012, President Obama made three recess

appointments to the Board, bringing the Board to its full five-member capacity. The charging parties moved to disqualify the appointees. And several senators opposed these appointments, arguing that they were invalid because, they contend, the Senate was not actually in recess.

In April 2012, the Board entered orders denying the motions for reconsideration, ruling that retroactive refunds were inappropriate because the unions had not necessarily been on notice that their annual renewal policies were unlawful, and it declined to consider the legitimacy of the recess appointments. The charging parties ("Petitioners") timely filed petitions for review to this court.

## II. ANALYSIS

Petitioners argue that the NLRB decisions denying their request for retroactive refunds should be reversed and the matter remanded because they were not made by a properly constituted Board. They assert that the Recess Appointments Clause only allows recess appointments to be made if the vacancies originate during the Senate's recess, and that recess appointments can only be made during intersession recesses (any recess between the two annual sessions of Congress, generally starting sometime in December and ending on January 3 when the next session starts) and not intrasession recesses (any recess during an annual session of Congress). Petitioners reason that the recess appointments were also invalid because the Senate did not consider

itself to be in recess at the time the appointments were made notwithstanding its designation of its sessions as "pro forma." On the merits, Petitioners also challenge the Board's denial of retroactive relief in the form of refunds. We need not address these arguments, however, because we agree with Respondents that Petitioners lack standing to bring this appeal.

### A. Petitioners Were Not "Aggrieved" Because Their Only Claimed Injury Was Redressed by the Final NLRB Orders

The relevant portion of the National Labor Relations Act provides:

> Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such a court a written petition praying that the order of the Board be modified or set aside.

29 U.S.C. § 160(f). Therefore, only persons who are "aggrieved" by the Board's final order may petition for review of the decision by the Court of Appeals. "A party is 'aggrieved' by an order if the order results in an 'adverse effect in fact.'" *Harrison Steel Castings, Co. v. NLRB*, 923 F.2d 542, 545 (7th Cir. 1991) (citation omitted).

The parties generally assume that the meaning of the term "aggrieved" is coextensive with the familiar "injury-in-fact" requirement of Article III standing. *See Bloom v. NLRB*, 153 F.3d 844, 849 (8th Cir. 1998), *rev'd on other grounds sub nom. Local 12, OPEIU v. Bloom*, 119 S. Ct. 1023 (1999) ("Congress's express grant of standing to aggrieved persons such as Bloom extends to the limits of that which is permitted by Article III . . . ."). However, the Supreme Court recently held that a similar "aggrieved" requirement in Title VII did not refer to "anyone with Article III standing," but referred more narrowly to people who "'fall[] within the "zone of interests" sought to be protected by the statutory provision whose violation forms the legal basis for his complaint.'" *Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 870 (2011) (citation omitted). A party's interests do not fall within that "zone" if they "'are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Id.* (citation omitted).

We need not decide whether the term "aggrieved" in the NLRA refers to anyone who suffers an "injury-in-fact" for Article III purposes or refers to something narrower. Even if the more generous requirements of Article III standing governed the definition of that term, Petitioners have not themselves suffered any injury-in-fact from the NLRB decisions. Petitioners either renewed their objections annually under protest or were never required to renew their objections at all, and so their only injury was the burden or threat of having to renew their objections year after year. In August 2011

when the NLRB ordered the unions to no longer enforce their annual renewal policies, that burden was lifted and the threat was removed. That decision is not being appealed by the unions. Petitioners themselves simply suffered no injuries from the Board decisions that could be remedied on appeal, and so they lack standing to bring the instant petitions for review. *See, e.g.*, *Pirlott v. NLRB*, 522 F.3d 423, 433 (D.C. Cir. 2008) ("There is nothing in the Board's decision that resulted in a cognizable injury to the Charging Parties sufficient to support a showing of aggrievement under [§ 160(f)].").

### B. The NLRB's Failure to Reimburse Echegaray and Yost for Postage Does Not Confer Standing Since that Request Was Waived

Petitioners argue that at least Echegaray and Yost were "aggrieved," because the NLRB decisions failed to order reimbursement for the postage costs that they incurred when they annually mailed their objections. To be sure, "an identifiable trifle is enough to fight out a question of principle; the trifle is the basis for standing and the principle provides the motivation." *United States v. SCRAP*, 412 U.S. 669, 689 n.14 (1973). But a thorough review of the record on appeal makes clear that Petitioners *never* made any meaningful request for postage reimbursement at any stage of the administrative proceedings. *See Local 65-B, IBT v. NLRB*, 572 F.3d 342, 348 (7th Cir. 2009) ("the NLRA bars us from considering arguments that the party petitioning for review did not raise before the Board" (citing 29 U.S.C. § 109(e))). We

cannot analyze, on the merits, whether the NLRB abused its discretion in denying certain relief when the NLRB never had a meaningful opportunity to even consider a request for that relief to begin with.

Petitioners stress that they amply communicated their request for "make-whole" relief and suggest that the use of this term in the NLRB context somehow includes a request for postage reimbursement (i.e., Echegaray and Yost cannot be "made whole" unless they are reimbursed for that postage). The NLRB regulations and guidelines cited by Petitioners do suggest that "make-whole" relief is a term of art that is used in the NLRB proceedings with some frequency (though they suggest little more than that). But even if a request for "make-whole" relief by a *Beck* objector, who annually renews his objection under protest, provides meaningful notice of a postage reimbursement claim to the NLRB, Petitioners did not give adequate notice that they were seeking "make-whole" relief on behalf of themselves. In the motion for reconsideration filed by Richards, Echegaray, and Yost, they expressly state: "Charging Parties hereby ask the Board, on reconsideration, to order such nationwide similarly situated 'make whole' remedies *for all other discriminatees besides the three Charging Parties*" (emphasis added). Neither the original charges filed nor the NLRB General Counsel complaints seek "make-whole" relief on behalf of Petitioners. The brief filed by Richards, Echegaray, and Yost appealing the ALJ decision did include a request for a "nationwide reimbursement remedy," but it later explains exactly what they meant: "in order to return employees to the

position that they would have been in 'but for' the USW's unlawful policies, the *union must reimburse all dues* that it collected for nonrepresentational purposes from employees . . . whose *Beck* objections were not honored . . . or whose status was changed from objector to non-objector as a result of the policy" (emphasis added). Postage reimbursement was not mentioned. It has been clear from the beginning that the only "make-whole" or retroactive relief Petitioners ever really sought was the refund of dues for other employees. Because any request for postage reimbursement has been waived, this last-minute request cannot serve as a basis for standing. *Cf. Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 948 (7th Cir. 2006) ("'[I]t should have been clear to the Court of Appeals that a claim for nominal damages, extracted late in the day from Yniguez's general prayer for relief and asserted solely to avoid otherwise certain mootness, bore close inspection.'" (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997))).

We also note that, since we may only consider petitions for review of NLRB decisions if this circuit is "where[] the unfair labor practice in question was alleged to have been engaged in or where[] such person resides or transacts business," 29 U.S.C. § 160(f), Echegaray and Yost may also lack standing by virtue of where they live and work. Echegaray lives in Pennsylvania, Yost lives in West Virginia, both work in West Virginia, and USW is headquartered in Pennsylvania (where the annual renewal policy was presumably drafted). Given these facts, it was incumbent upon Echegaray and Yost

to also explain in their Jurisdictional Statement how it is that they are entitled to petition this court for review. They did not.

### C. Petitioners Do Not Have Standing to Petition for Review Just Because They Are Charging Parties

The essence of Petitioners' final argument is that they have standing simply because they were the original charging parties. They suggest that they should be the ones to see it to the end since they initiated this action on behalf of themselves and their fellow employees.[*] Some cases contain language that would seem to support this view. *See, e.g.*, *UAW v. Scofield*, 382 U.S. 205, 210 (1965) ("[W]hen the Board dismisses certain portions of the complaint and issues an order on others . . . [t]he charging party is aggrieved with respect to the portion of the decision dismissing the complaint."); *Local 282, IBT v. NLRB*, 339 F.2d 795, 799 (2d Cir. 1964) ("[W]hen the case has been carried to a decision on the merits by the Board, the charging party has standing as a 'person aggrieved' under [§ 160(f)] to seek review of an order granting inadequate relief or denying it altogether. The General Counsel cannot appeal from his own Board's decision, the respondent has no motive to do so, and this portion of the statute would thus be rendered nuga-

---

[*] Though the NLRB General Counsel technically takes up the baton after the charges are filed, 29 C.F.R. § 102.8 generally permits the charging parties to fully participate as parties throughout the administrative proceedings.

tory unless the charging party were recognized as a 'person aggrieved.'"); *Marine Eng'rs Beneficial Ass'n No. 13 v. NLRB*, 202 F.2d 546, 548 (3d Cir. 1953) (The NLRB "rules and regulations permit the charging party to be listed as a party to the proceedings from the outset instead of relating him to intervention. He is a party aggrieved under [§ 160] and . . . 'may contest' the correctness of the Board's order." (citation omitted)); *NLRB v. OCAWIU*, 476 F.2d 1031, 1036 (1st Cir. 1973) ("[T]he charging party in an unfair labor practice proceeding possesses a unique legal status. Although like a complaining witness in a criminal prosecution in that it cannot compel issuance of a complaint, it has far greater powers once the complaint issues . . . [and] participate[s] fully in the subsequent hearing and proceedings before the Board . . . . If its position is unsuccessful before the Board, it may petition the appropriate court for review, as 'a person aggrieved' under [§ 160(f)]."); *see also UAW v. NLRB*, 231 F.2d 237, 242 (7th Cir. 1956) ("The charging party in a labor case is something like a complaining witness in a criminal case. But he is much more than that, for a complaining witness is not entitled to appeal even where an appeal is allowed for the prosecution in a criminal case.").

However, none of these cases involved a situation like this one, where the charging party was not actually injured by the final NLRB order. *See, e.g., IWIU v. NLRB*, 360 F.2d 823, 826 (D.C. Cir. 1966) ("Of course, a charging party in some circumstances may be aggrieved by an order which denies in part the relief sought, but that does not seem to us to be the case pre-

sented here."). The text of 29 U.S.C. § 160(f) does not suggest that charging parties have talismanic status for standing purposes, and it strictly refers to "person[s] aggrieved," with no exceptions for charging parties or for anyone else.

Continuing their theme that charging parties occupy a special category of persons with standing, Petitioners analogize this case to a class action, and point to the well-established rule that the mootness of a class representative's claim does not automatically prohibit the class representative from continuing to litigate the class action. *See Sosna v. Iowa*, 419 U.S. 393, 401 (1975). They argue that like class representatives, the charging parties here have brought and litigated this case on behalf of similarly situated employees. *See NLRB v. Ind. & Mich. Elec. Co.*, 318 U.S. 9, 17 (1943) (even a "stranger" to the dispute may bring a charge on behalf of someone else); 29 U.S.C. § 160(b) (no mention of any prerequisites for filing a charge); 29 C.F.R. § 102.9 ("A charge . . . may be made by any person . . . ."). So they contend that kicking them out at this stage because they no longer need a remedy for themselves would be tantamount to improperly kicking a class representative out simply because the representative's claims become moot. The Eighth Circuit has adopted a version of this theory, *see Bloom*, 153 F.3d at 848, as has the Sixth Circuit in an unpublished decision. *See Cecil v. NLRB*, 194 F.3d 1311, 1999 WL 970312, at *3 n.1 (6th Cir. Oct. 14, 1999) (unpublished) ("We recognize that Cecil's lawsuit has never been formally certified as a proper class action, . . . [but] [w]e see no functional difference, as it relates to mootness,

between this process and that of typical class actions. . . . [W]e are comfortable applying [the Supreme Court's] decisions on mootness and class actions in this analogous context."). *But see Orce v. NLRB*, 133 F.3d 907 (2d Cir. Dec. 9, 1997) (unpublished).

As a preliminary matter, we note that Petitioners' endeavor to employ a class action analogy potentially backfires. Though the unions acknowledge that anyone can file the initial unfair labor practice charge, even total "strangers," *see Ind. & Mich. Elec. Co.*, 318 U.S. at 17, they suggest that Petitioners are not similarly situated enough with the employees who want refunds to adequately represent them. It is indeed unclear that Petitioners are "similarly situated" with the employees who want refunds: while they were all subject to the same annual renewal policies, the relief sought is quite different. In addition, including employees who once objected but later failed to renew potentially raises the unique problem of determining whether each of those employees simply intended not to renew (i.e., intended to opt back in), and thereby presumably lost his right to a refund. We also acknowledge on the other hand that the NLRA does not have an explicit "similarly situated" type of requirement, unlike, for instance, the Fair Labor Standards Act. *See* 29 U.S.C. § 216(b) ("An action to recover the liability prescribed . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."). And nothing in the record before us suggests that the ALJs or the NLRB took issue with Petitioners' seeking relief on behalf of the

employees allegedly entitled to refunds (neither, for that matter, did the unions during the administrative proceedings).

We need not decide today whether some kind of representativeness or "similarly situated" requirement exists in the NLRA, or, if so, whether Petitioners satisfy that requirement. That is because even if Petitioners pass that test with flying colors, and even if Petitioners are right that class action mootness principles apply in the NLRB context, they still do not have standing. Simply put, whether a case is moot under Article III is not the same as whether a party has been statutorily "aggrieved" by the NLRB. *See, e.g.*, *In Matter of The Watch Ltd.*, 257 Fed. Appx. 748, 749-50 (5th Cir. Dec. 7, 2007) (unpublished) (analyzing statutory "persons aggrieved" requirement in bankruptcy context separately from Article III mootness); *Public Utils. Comm'n v. FERC*, 100 F.3d 1451, 1457-59 (9th Cir. 1996) (analyzing statutory "aggrieved" requirement in Natural Gas Act separately from Article III mootness); *N.C. Utils. Comm'n v. FERC*, 653 F.2d 655, 660-69 (D.C. Cir. 1981) (same). In this case, we do not find that the instant petitions are moot for Article III purposes; we simply find that Petitioners have failed to satisfy the statute's aggrievement requirement. Petitioners suggest that they are indispensable to the appellate process in asserting that "*only* a charging party can . . . seek judicial review" of final NLRB orders (Reply Br. at 8 (emphasis added)), but that assertion is directly contrary to the plain text of 29 U.S.C. § 160(f), which provides that "*[a]ny* person who has been aggrieved by a final order of the Board" may bring a petition for review. (Emphasis added.)

### III. CONCLUSION

For the above-stated reasons, we DISMISS the petitions for review.